145 So. 452

**DAFFIN, Tax Assessor, v. SCOTCH LUMBER CO.**

1 Div. 740.

Supreme Court of Alabama.
Jan. 12, 1933.

Thos. E. Knight, Jr., Atty. Gen., and Thos. Seay Lawson, Asst. Atty. Gen., for appellant.

Adams & Gillmore, of Grove Hill, for appellee.

BROWN, J.

This appeal is from the judgment of the circuit court awarding a peremptory writ of mandamus, commanding the appellant as tax assessor of Clarke county to enter on the record of the tax assessment against the appellee, the valuation of the property as fixed by the board of review on July 11, 1932.

The question presented by this appeal is whether or not the board of review, on the facts alleged in the petition, if sustained by the proof, had jurisdiction to reopen the assessment and revalue the property.

The property involved is real estate, consisting of timbered and cut-over lands, the improvements thereon, and mineral rights.

The petition avers, in substance, that the petitioning taxpayer duly listed the lands, consisting of 123,414 acres, described according to the government survey, with estimated valuation of 60 per cent. of the market value of $14.40 per acre on 30,309 acres, and 93,105 acres at $1.80 per acre, or total estimated value of $604,038; separately listing the improvements, dwelling houses, and log camps, as personal property, at an estimated valuation on like basis of $18,812; oil and mineral rights, 1,013 acres estimated at 10 cents per acre, $101.30; that the respondent, as tax assessor, or the board of review, at some time unknown to the petitioner, and without notice to him, reclassified the property and assessed the 123,414 acres, "land only" at $222,-145, "timber only" at $757,770 transferred the "dwelling houses and log camps" to the real estate column, at an assessed valuation of $18,812, and transferred the "oil and miner-

al rights" to the personal property column at an assessed valuation of $101.30; that no valuation was entered by the assessor or board of review upon any of the individual "items of real property" as listed by the petitioner; nor was any such valuation entered on the recapitulation sheet as related to the items listed—assessing the timber and lands, as lands; that for the preceding tax year, 1931, the total value of petitioner's real estate as finally fixed was $982,292; that for the preceding tax year the items "described as dwelling houses and as log camps had both been entered as personal property, and the value thereon fixed as such," and remained classified as personal property for said year; that as finally entered up for the current year 1932, "as hereinabove more specifically set forth, the aggregate value of its real estate was fixed by said Board of Review at $998,-727"; that petitioner was not notified "that there had been added to its tax return list, either by the tax assessor or by the Board of Review, the item which was entered thereon," as "timber only," or that its property had been "reclassified and redistributed," nor that there had been a transfer from its list of personal property to its list of real estate, the items designated as "dwelling houses and log camps," and "was not notified in any manner that the aggregate value of its real estate had been fixed for taxation by the Board of Review at an amount exceeding the value of said real estate for the preceding year"; that there had been no severance in the ownership of said timber from the land, and the assessment as made was unauthorized; that on July 5, 1932, petitioner filed with the tax assessor a protest in writing, a copy of which is made exhibit to the petition, and thereafter "the Board of Review held a meeting for the purpose of hearing the protest," at which time the petitioner appeared and offered evidence in support of its protest, and the Board of Review, by affirmative action of all of its members, except the tax assessor, "agreed to fix and did fix the value of the real estate of your petitioner, not including the dwelling houses and log camps, at the following amounts, to-wit: 30,309 acres of land at $14.-40, $436,449.00; 93,105 acres of land at $1.80, $167,589.00, * * * in lieu of the entries theretofore made by the tax assessor and/or the Board of Review, as hereinabove indicated, as 'land only' and 'timber only,' so that said items last mentioned should be eliminated from the said tax return list."

In the protest filed with the tax assessor, attached to and made a part of the petition for mandamus, it is alleged "that the total amount of the items thus listed and valued by the tax assessor and by the Board of Review, as real estate upon the list of property of this taxpayer, exceeded in the aggregate the value fixed for the preceding tax year upon the real estate of this taxpayer; but, nevertheless, this taxpayer was never noti-fied in any manner that there had been such increase in the valuation of its real estate.".

Section 56 of the act creating the board of review (Acts 1923, p. 181, Revenue Code 1929, § 186) provides: "Immediately upon the completion of the work of reviewing and adjusting assessed valuations by the Board of Review, required in this act, the tax assessor shall give notice by publication once a week for three consecutive weeks in a newspaper published in the county, and if no newspaper is published in the county, by posting notices in three public places in each precinct of the county, that the assessed valuations of all property listed for taxation have been fixed as provided by law and that the tax return lists showing thereon such assessed valuations are in his office and open for public inspection, and that the Board of Review will sit at the courthouse of the county, on the first Monday in June to consider such protests as may be filed by any taxpayer as herein provided, *and that any taxpayer who is not satisfied with the valuations of his property as fixed and entered on the return list as required herein, may file objections in writing to such assessed valuations with the secretary of said board, on or before the last Monday in May, and the taxpayer shall set out in such objections filed, the description of each item of property and his reason for making objections to the assessed valuation as placed thereon.*" (Italics supplied.)

And section 57 provides: "*For the purpose of hearing objections filed in writing to any assessments or valuations fixed as provided for herein,* the Board of Review shall sit at the courthouse in their respective counties on the first Monday in June in each year, from 9 A. M. to 5 P. M., and shall continue as long as may be necessary, provided such sitting shall not be extended beyond the second Monday in July, unless otherwise ordered by the State Tax Commission, to dispose of all cases *where objection to valuations or assessments has been filed in writing by any taxpayer, as provided in this act.* At such sitting the property owner may appear in person, or by agent or attorney and produce evidence in support of objections if any, to any assessment or valuation theretofore made, and it shall be the duty of the Board of Review to examine under oath any complaining property owner, and to examine any other witnesses under oath as to the fair and reasonable market value of the property of such owner, and if it is found from the evidence that the valuation theretofore placed was not sixty per cent of the reasonable market value of such property, whether more or less, then the said valuation or assessment shall be corrected so that it will show sixty per cent of a fair and reasonable market value and such corrected amount shall constitute the assessed value of such property. But if it is found from the evidence that the assessed value placed on the property was sixty per cent of a fair and rea-

sonable market value thereof, the said value shall stand as the assessed value of said property, unless an appeal is taken therefrom, as provided by this act." (Italics supplied.)

█ The jurisdiction and power conferred by said section 57 is judicial, and is limited to "hearing objections filed in writing to any assessments or valuations fixed as provided" in the act, and it is familiar law,. that "Conditions precedent to a statutory review by an officer or board must, of course, be complied with. Whatever may be the relief sought, the party applying for it must comply strictly with the provisions of the statute which confers the right." 3 Cooley on Taxation, 1206; Birmingham Building & Loan Association v. State, 120 Ala. 403, 25 So. 52.

The petition for the writ of mandamus clearly shows that the objection to the assessment was not filed on or before the last Monday in May, and, unless the statute contains an exception to this limitation on the taxpayer's right of review, and the petitioner's case falls within the exception, the proceedings of the board were coram non judice and void.

█ The powers conferred on the tax assessor by section 36 of the act of 1923 (Acts 1923, pages 174, 175, Revenue Code 1929, § 157) are to be exercised ex parte and are ministerial. This section provides, inter alia: "The assessor shall, from information entered on the tax return list and from all other information known to him, or which he may procure, proceed to ascertain ·what, in his best judgment, is a fair and reasonable market value of each item of property returned by or listed to any taxpayer; provided, ·however, that the assessed value of any real estate or improvements as fixed for taxation for the year next preceding the then current tax year shall be prima facie the basis of the value of such property for assessment for the current tax year *and such property shall not be assessed for taxation at a less valuation unless upon evidence submitted to the Board of Review, as provided for herein, it is found that the assessed valuation of the property reviewed should be reduced;* and the assessor shall in separate columns, enter on such list such amount and value, and the deduction for exemption to which such taxpayer is entitled; and the tax assessor shall also add to such list any item of property subject to taxation, owned by such taxpayer, or in which he has any interest whatever and which he has failed or omitted to place on such list; and the taxpayer shall be given notice by the assessor, by registered mail, return receipt demanded, or in person, of the items of property added to his assessment list after such list has been filed' and before the tax assessor has completed his assessment; and the assessor shall, upon demand, furnish the taxpayer with a certified copy of his assessment list so amend-

ed. *In the event the value of real or personal property of any taxpayer is increased by the Board of Review, herein created, over the assessed value thereof, for the next preceding year, the taxpayer shall be furnished by registered mail, return receipt demanded, or in person, by the Secretary of the Board of Review, with a statement showing separately the value of his personal property, and his real property, and improvements thereon, such statement to be signed by the Chairman of the Board of Review, and also that such taxpayer may file in writing, with the Secretary of the Board of Review, on or before the last Monday in May, objections to any assessed valuation fixed as herein provided. But failure to give or receive the notices required in this section shall not invalidate such assessment. Provided, however, that the taxpayer shall have the right any time before the taxes become delinquent to appear before the Board of Review and have the assessment of his property reopened, if satisfactory proof is made that the taxpayer or his agent did not receive notice of such increase."* (Italics supplied.) Acts 1923, pages 174, 175, § 36.

Section 55 of the act requires the board of review to meet on the second Monday in April "and sit as long as may be necessary to carefully examine and inspect all tax returns and assessments delivered to· it by the county tax assessor," and. make returns, "if the board finds that any taxpayer has neglected to make .a return or has omitted from his return any property that should be" taxed, and fix the value of such property; and requires in such case that the secretary of the board —the tax assessor—must give notice to the taxpayer by registered mail. These are ministerial powers. Birmingham Building & Loan Association v. State, supra.

And section 62 of the act provides: "The failure of the tax assessor, Board of Review, or the State Tax Commission, to perform any of the duties of assessing and valuing property, or hearing objections to assessment valuations, at the time prescribed, or to complete such duties within the time specified by this act, shall not invalidate any assessment or any act of such tax assessor, Board of Review or State Tax Commission, made or done after the expiration of such time. The duty of the tax assessor to· inspect and examine real property in his county is directory and failure to do so shall not invalidate assessments and valuations made by the assessor or the Board of Review or the State Tax Commission." Acts 1923, pp. 183, 184, § 62.

Under the provisions of the last-cited sections (sections 36, 55), if the value of the property listed by the taxpayer is increased by the tax assessor over the assessed value for the previous year, or if new items of property are added to the assessment by the tax assessor or the board of review, the taxpayer is entitled to notice of such increase or new item, and, if such notice is not given, the taxpayer

is given the right, on proper application to the board of review at any time before the taxes become delinquent, to have the assessment reopened and to a hearing, and, if the valuation is excessive or the added items are not assessable to him, to have the assessment corrected, and to this end section 62 of the act gives the board full power and jurisdiction. Acts 1923, pp. 183, 184, § 62, Revenue Code 1929, § 192.

■ Taking the averments of the petition as true, yet resolving doubt against the pleader, there is nothing to show that new items were in fact added to the assessment, but the averment is that the property listed was reclassified by the tax assessor by transferring the dwelling houses and log camps, theretofore listed as personal property, to the *real estate* column of the assessment roll, and, as a result, the assessed value of the petitioner's property was increased to the extent of the assessed value of the dwellings and log camps.

This reclassification, however, did not increase the aggregate value of the lands, the timber, and the dwellings and log camps.

■■ There can be no doubt that it was within the power of the tax assessor to classify the property listed, in making up the assessment roll, and to place the dwellings and log camps in the real estate column. 3 Cooley on Taxation, § 1065. And the mere fact that the aggregate value of the real estate was increased in this way, without increasing the aggregate value of the whole property over the previous year, did not require notice to the taxpayer.

■ We are therefore of opinion that the demurrers to the petition were well taken, and were erroneously overruled.

What we have said above applies to the case made by the averments of the petition for mandamus. The most the evidence shows as to the increase in the valuation is as averred in the petition. But the appellee contends further that there had been no severance of the title of the timber from the land, and that the tax assessor had no authority to separately assess the land and the timber, and the assessment in this respect is void, and for this reason he was entitled to have his assessment reopened on his application to the board.

It may be conceded that, if the assessment was void for this reason, there would be a "failure of the tax assessor and the Board of Review" to perform some of the duties imposed by the act, and, under the provisions of section 62 of the act, above quoted, the board would have jurisdiction to make a proper assessment.

■ There are two answers to this contention. The first is that there is nothing in the petition for mandamus or the objection filed with the secretary of the board, going to show that the assessment was void for this reason. The second is that the statute authorizes the separate assessment of lands and timber where there has been a severance of title. Revenue Code 1929, §§ 150, 151. Therefore the severance in the assessment, though there has been no severance in title, not resulting in prejudice to the taxpayer, is a mere irregularity, but the assessment is not thereby rendered void (3 Cooley on Taxation, § 1281), and is within the curative provisions of section 62, Acts 1923, pp. 183, 184, Revenue Code 1929, § 192. Winona & St. Peter Land Co. v. Minnesota, 159 U. S. 526, 16 S. Ct. 83, 40 L. Ed. 247; Ruffin v. Board of Commissioners of Orange County, 69 N. C. 498.

■ Moreover, it appears from the testimony offered, and this is without dispute, that the severance in the assessment of timber and land in previous years was by and with the consent of the taxpayer, and that the assessor merely observed the severance as made in the last preceding assessment in making the assessment for the year 1932.

Another contention of the appellee is that, by adding the value of the timber to the value of the land and ascertaining the price per acre, it will appear that the value of the land was increased in the 1932 assessment 7 cents per acre over the assessment for 1931. We are of opinion that this contention is without merit; the land was assessed on a basis of $1.80 per acre both years; and there was no increase in the value of the timber. The apparent discrepancy arises, taking appellee's method of calculation, from the fact that there are, stated in round numbers, approximately 90,000 acres of cut-over lands as compared to 30,000 acres of timber lands.

Our judgment, therefore, is that appellee was not entitled to the issuance of the writ of mandamus.

The judgment is therefore reversed and the petition dismissed.

Reversed and rendered.

ANDERSON, C. J., and THOMAS and KNIGHT, JJ., concur.