20 So.2d 41

BROADWAY, Director of Department of Industrial Relations, v. ALABAMA DRY DOCK & SHIPBUILDING CO.

I Div. 216.

Supreme Court of Alabama.

Oct. 19, 1944.

Rehearing Denied Dec. 14, 1944.

Wm. N. McQueen, Acting Atty. Gen., Richard J. Demeree, Counsel Dept. of Industrial Relations, of Montgomery, and Jas. A. Simpson, John W. Lapsley, and Lange, Simpson, Brantley & Robinson, all of Birmingham, for appellant.

Smith, Hand & Arendall, of Mobile, for appellee.

204

R. S. Ward, of Geneva, Horace C. Wilkinson, of Birmingham, McCorvey, McLeod, Turner & Rogers, of Mobile, and Hill, Hill, Whiting & Rives, of Montgomery, amici curiae.

BROWN, Justice.

The appellee, Alabama Dry Dock and Shipbuilding Company, made application, as provided in Subsection (H), Section 204, Tit. 26, Code 1940, to the Director of Industrial Relations for a review as to the determination of *its benefit wage percentage and its contribution rate as fixed by its benefit wage percentage*, effective April 1, 1941. The director denied its application on June 30, 1941, and on July 20, 1941, appellee applied to the Circuit Court of Mobile County and obtained an appeal from said ruling of the director, and on the hearing of said appeal, the court reviewed the director's determination of appellee's benefit wage percentage and his contribution rate as fixed by its benefit wage percentage, holding that the director erred in fixing appellee's benefit wage percentage for the year beginning April 1, 1941, at 25.02 per cent, and fixed 15 per cent as correct. Applying this percentage to the state's experience factor of 13 per cent, ascertained that its contribution rate was 1.5 per cent, and not 2.5 per cent as fixed by the director, and as a result of these errors appellee paid $106,299.84 into the fund in excess of its liability, and is entitled to a refund thereof. From that judgment the director appealed.

The appellant's major contention is that the statute is remedial and when liberally interpreted a review of the state's experience factor fixed by the director for said year is within the scope of the taxpayer's appeal from the director's denial of his petition for review, and that the circuit court erred in not reviewing the director's fixation of the state's experience factor.

We are not of opinion that the rule applicable to the interpretation of remedial statutes is here applicable. This statute is original and not remedial, creating rights and duties in derogation of the common law, is paternalistic in character, and invokes and applies the taxing power of the state. Carmichael v. Southern Coal & Coke Co., 301 U.S. 495, 57 S.Ct. 868, 874, 81 L.Ed. 1245, 109 A.L.R. 1327; 50 Am. Juris, p. 33, § 15. The United States Supreme Court, in the cited case, sustained this act against an attack that it violated the Constitution of the United States, in that it took private property for private uses. The Court, speaking through Stone, J., observed:

"The purposes specified by the Act requires our consideration of the objections pressed upon us that the tax is invalid because the purposes are invalid, and because the methods chosen for their execution transgress constitutional limitations. It is not denied that since the adoption of the Fourteenth Amendment state taxing power can be exerted only to effect a public purpose and does not embrace the raising of revenue for private purposes. [Omitting authorities.] The states, by their constitutions and laws, may set their own limits upon their spending power [Omitting authorities], but the requirements of due process leave free scope for the exercise of

a wide legislative discretion in determining what expenditures will serve the public interest.

"This Court has long and consistently recognized that the public purposes of a state, for which it may raise funds by taxation, embrace expenditures for its general welfare. [Omitting authorities.] The existence of local conditions which, because of their nature and extent, are of concern to the public as a whole, the modes of advancing the public interest by correcting them or avoiding their consequences, are peculiarly within the knowledge of the legislature, and to it, and not to the courts, is committed the duty and responsibility of making choice of the possible methods. [Omitting authorities.] As with expenditures for the general welfare of the United States [Omitting Authorities], whether the present expenditure serves a public purpose is a practical question addressed to the lawmaking department, and it would require a plain case of departure from every public purpose which could reasonably be conceived to justify the intervention of a court. [Omitting Authorities.] The present case exhibits no such departure.

"(a) Relief of Unemployment as a Public Purpose. Support of the poor has long been recognized as a public purpose. [Omitting authorities.) We need not labor the point that expenditures for the relief of the unemployed, conditioned on unemployment alone, without proof of indigence of recipients of the benefits, is a permissible use of state funds. For the past six years the nation, unhappily, has been placed in a position to learn at first hand the nature and extent of the problem of unemployment, and to appreciate its profound influence upon the public welfare. Detailed accounts of the problem and its social and economic consequences, to be found in public reports of the expenditures of relief funds, and in the studies of many observers, afford a basis for the legislative judgment. It suffices to say that they show that unemployment apparently has become a permanent incident of our industrial system; that it varies, in extent and intensity, with fluctuations in the volume of seasonal businesses and with the business cycle. It is dependent, with special and unpredictable manifestations, upon technological changes and advances in methods of manufacture, upon changing demands for manufactured products—dictated by changes in fashion or the creation of desirable substitutes, and upon the establishment of new sources of competition.

"The evils of the attendant social and economic wastage permeate the entire social structure. Apart from poverty, or a less extreme impairment of the savings which afford the chief protection to the working class against old age and the hazards of illness, a matter of inestimable consequence to society as a whole, and apart from the loss of purchasing power, the legislature could have concluded that unemployment brings in its wake increase in vagrancy and crimes against property, reduction in the number of marriages, deterioration of family life, decline in the birth rate, increase in illegitimate births, impairment of the health of the unemployed and their families and malnutrition of their children.

"Although employment in Alabama is predominantly in agriculture, and the court below found that agricultural unemployment is not an acute problem, the census reports disclose the steadily increasing percentage of those employed in industrial pursuits in Alabama. The total amount spent for emergency relief in Alabama, in the years 1933 to 1935, inclusive, exceeded $47,000,000, of which $312,000 came from state funds, $2,243,000 from local sources and the balance from relief funds of the federal government. These figures bear eloquent witness to the inability of local agencies to cope with the problem without state action, and resort to new taxing legislation. Expenditure of public funds under the present statute, for relief of unemployment, will afford some protection to a substantial group of employees, and we cannot say that it is not for a public purpose.

"The end being legitimate, the means is for the legislature to choose. When public evils ensue from individual misfortunes or needs, the legislature may strike at the evil at its source. If the purpose is legitimate because public, it will not be defeated because the execution of it involves payments to individuals. * * *"

In the interpretation and application of statutes of this class, it is a well settled rule, that they are to be strictly construed against the taxing power and favorably to the taxpayer. Westenhaver v. Dunnavant, 225 Ala. 400, 143 So. 823; 18 Ala.Dig. 139, Statutes, ☞239; State v. Seals Piano Co., 209 Ala. 93, 95 So. 451; 18 Ala.Dig. 141, Statutes, ☞245.

The state's experience factor was not within the scope of the taxpayer's petition for review authorized by the statute. The statute provides:

"Any employer may apply to the director for and shall be entitled to *a review as to the determination of his benefit wage percentage and his contribution rate as fixed by his benefit wage percentage,* provided such application is filed within sixty days of the date of the mailing by the director to the employer of the notice of such determination. *Pending such review such employer shall withhold and transmit employee contributions and make all contribution payments otherwise required by this chapter, at contribution rates fixed by the determination sought to be reviewed;* and resulting overpayments or underpayments of contributions by the employer, shall, *upon any redetermination, be adjuster or refunded pursuant to section 243 of this title.* Any employer may within thirty days after the date of the mailing by the director to such employer of notice of the ruling of the director upon such application for review appeal such ruling to the circuit court of any county wherein the employer is engaged in doing business, upon such terms and upon giving such security for costs as the court may upon application prescribe; trial in that court shall be de novo with respect to his benefit wage percentage. *And redetermination of benefit wage percentage, whether by the director or the court on appeal, shall not be effective as to an employee contribution rate before the calendar quarter first beginning after such redetermination.*" [Italics supplied.]

This section clearly limits the review to a taxpayer's benefit wage percentage and his contribution rate as fixed by his benefit wage percentage. Expressio unius est exclusio alterius. 50 Am.Juris. 450, § 429. The review authorized by the appeal to the circuit court can be no broader than the review authorized by the taxpayer's application to the director. The statute not only requires prompt action on the part of the taxpayer to obtain the review, but contemplates an early determination of the controversy by the director and the court. The taxpayer's benefit wage percentage and his contribution rate is fixed by the director on a survey of the particular business of the taxpayer and its scope; while the state experience factor is fixed by a survey of all of the employ-ers in the state within the influence of the act, as stated in brief, more than 6,000 scattered over the state.

The taxpayer is required to give security for costs of the appeal, and if his appeal is to be burdened by a re-survey on evidence offered in respect to all such employers, it would be so burdensome, that the taxpayer would often suffer the imposition of an unwarranted tax, rather than assume the risks resulting from such review, and such review would prolong the litigation intolerably. In the meantime the taxpayer must continue to pay at the erroneous fixed rate, pending his appeal.

The provision that the "trial in that court shall be de novo *with respect to his benefit wage percentage,*" clearly limits the scope of the hearing on the appeal and contemplates that the rate will be determined anew on evidence adduced by the parties, without any presumption in favor of the director's decision or previous fixation. See 25 C.J.S., De, p. 1011, Notes 36–38; Collier & Willis, Ltd., v. Astor, 9 Cal. 2d 202, 70 P.2d 171, 173; 18 C.J., De Novo, p. 486; Black's Law Dic. (1891) p. 230, De Novo.

The appellant insists that the court erred in treating the employees of the appellee as maritime workers, and in applying the fractional formula provided for in § 204(B) in the reduction of the employees' benefit wage. The argument is that the court ignored the provisions of Section 211, that "Until such determination of the director, no industry shall be deemed to be a maritime industry." The agreed statement of facts clearly shows that this status had been determined by the director effective February 1, 1940, and said employees had been in this class previous to such determination. We are of opinion, therefore, that the quoted provision of Section 211 is clearly without application, and the court did not err in applying the fractional formula. Metcalf et al. v. Department of Industrial Relations et al., 245 Ala. 299, 16 So.2d 787.

There can be no doubt that the legislature had plenary power to authorize and provide a review of the fixation by the director of the *state's experience factor,* but there is nothing in the provisions of § 204 (H), nor in the provisions of § 243, or any other part of such law, that authorizes such review. Why? Because the legislature intended, that aside from the limited review

authorized by § 204(H), and after the expiration of sixty days, the rate as fixed should be non-reviewable.

 Where applications for adjustments and refunds are made under § 243, Tit. 26, Code 1940, it must be assumed that the contribution rate fixed by the director is correct, and conclusively so. Whether or not there are erroneous payments or contributions, interest and penalties must be determined in the light of the contribution rate previously fixed. The legislature certainly did not contemplate, after the lapse of three years and more, the director could open up and go into, review and redetermine the state's experience factor, or the contribution rate of the employer and his employees. Such ruling would confound and make uncertain the law and the rights of taxpayers, and would jeopardize the integrity of the trust fund. The provisions of § 243, authorizing adjustments and refunds, contemplates that credit may be given on current taxes for the amount of such erroneous payment, or if this cannot be done, refund of the amount of such erroneous payment.

 The trial court fell into a technical error in rendering a personal judgment against the director, and authorizing issuance of execution for its collection. The form of judgment should be one requiring the Director, Frank R. Broadway, to allow adjustments by giving credit on current taxes due, or refund the sum of money resulting from such overpayment, and pay the costs of the proceeding. Code 1940, Tit. 26, § 243.

Other questions suggested are not pressed.

We find no other error on the record, and the judgment, as here corrected, will be affirmed.

Corrected and affirmed.

THOMAS, LIVINGSTON, and STAKELY, JJ., concur.

GARDNER, C. J., and FOSTER and SIMPSON, JJ., dissent in part, as stated in the opinion of FOSTER, J.

FOSTER, Justice (dissenting in part).

The questions on this appeal are controlled by Section 204, Tit. 26, Code, rightly interpreted.

Appellee is an employer whose duty is to make contributions to the "fund" set up in that title. The amount of his contributions is controlled by his contribution rate, and that is figured on the basis of the relation of his benefit wage percentage to the state's experience factor. Both of these elements are affected by the amount of employees' benefit wages. The wage percentage of this employer is affected by his experience in relation to his own employees' benefit wages; the state factor is affected by the employees' benefit wages of all such employers in the state. We held in the Metcalf case, 245 Ala. 299, 16 So.2d 787, that the employees' benefit wages should be computed on a four quarter basis as directed in Section 193, Tit. 26, Code.

The director had computed it for the year now in question, on an eight quarter basis, including the same four quarters required by section 193. It is agreed in this case in substance that if the computation be based on the four quarters using the same amount for them as was used for them in making the computation on the eight quarter basis, the contribution rate on account of that erroneous computation would be substantially the same as that which was fixed by using the eight quarters. To use the correct formula, based on four quarters, no factual inquiry is necessary outside the records of the department. No evidence or further information is needed. No expense is necessary to find out anything. The director found the facts here material and his finding is conclusive as a factual inquiry. There is no complication or difficulty in computing the entire problem on the basis of four quarters instead of eight. The effect is agreed to in this case. But the contention is that under Section 204(H), it is only an error in the percentage rate which can be corrected and not an error in the state factor, although that was the same error, and although it didn't enter into the factual finding. The contention in substance is an admission that had the error not been made in both aspects of the formula, the employer would not be entitled to his claim (except that based on the maritime contention); and that its correction by using the proper base period throughout the problem would result in substantially the same amount of contribution by him as was reached by the director, not considering the maritime question.

Did the legislature mean that to be the effect of an appeal under Section 204(H)? It is insisted that the state factor once

fixed is immutable, by any proceeding, for an error of law apparent on its face. This is never true in respect to any administrative authority created by law though its finding of fact may be conclusive. Such an error is open to correction on review by certiorari if there is no other remedy provided by law. 42 Am.Jur. 666, § 229; Alabama Power Co. v. City of Fort Payne, 237 Ala. 459, 187 So. 632, 123 A.L.R. 1337; Almon v. Morgan County, 245 Ala. 411, 16 So.2d 511(14); Baker v. Denniston-Boykin Co., 145 Ala. 407, 17 So.2d 148(7).

It is true that this inquiry by certiorari should not involve a review of the facts as found. But it does involve an application of those facts to the law. 4 Ala.Dig., Certiorari, ⊜64.

Section 204 (H) provides for a de novo trial with respect to the wage percentage, but says nothing about the state factor. If the court cannot on such appeal review the state factor in respect to an error on its face, why say that the de novo trial shall only apply to the wage percentage? It would be sufficient to say that the trial shall be de novo, without more, if the wage percentage is all that is to be tried. The evident meaning is that the court cannot go behind the findings of fact by the director on which the state factor is to be computed, but may review the ruling of the director in applying his findings to the law, or correct any apparent error, such as mathematical miscalculations. The contention would eliminate the correction of a glaring mathematical error in the computation of the state factor, though based upon a correct formula.

The foregoing discussion is emphasized by the fact that the entire process of determining the contribution rate of each employer is not judicial. But it is partly judicial and partly administrative. The director determines the facts on which the employee's benefit wages and on which the employer's benefit wages and the state factor are computed, such as the amounts paid the employees and whether they were maritime workers, and the amount of the payroll of the employer subject to the process. But the law fixes the base period, and the director has no discretion as to whether it shall be four quarters or eight quarters. In determining the facts necessary to be known to make the calculation by him he acts in a quasi judicial capacity and his determination is conclusive, except on appeal under section 204 (H), when they may be tried de novo. Here they are agreed on.

When there has been a determination of the facts necessary to enter into the formula, the set-up of the formula and the calculation of it are purely executive or administrative and not judicial. The director must make up the formula as specifically provided for by section 204, and make the calculation on that basis.

As when the value of assessable property is being ascertained by the proper tribunal, the process is judicial. 61 Corpus Juris 756, § 976, page 758, § 985. When the assessor applies the legal rate and makes a calculation of the tax, and sets down the amount, that is administrative. Daffin v. Scotch Lumber Co., 226 Ala. 33, 145 So. 452. See, section 62, Title 51, Code. That status is not changed because the calculation is as here complicated and has several stages in the process. In none of those stages has the director a discretion or a judicial act to perform. The standards are all fixed by law and not changeable in his discretion. It is immaterial whether it is the director or some other tribunal which finds and fixes the facts. When that is done the judicial feature of the proceeding has ended (subject to appeal), regardless of the agency which made the determination. Thereafter the process is administrative and not judicial.

This is important because an error in an administrative process is not conclusive in any sort of attack either direct or collateral, or whether it is apparent on its face or not. True, sometimes the officer who made the mistake may not be authorized to correct it, but it is not conclusive on the parties affected by it. (Section 243, hereinafter referred to, seems to give the director this power.)

That principle is fully settled in this State. Com'rs' Court v. Moore, 53 Ala. 25; Jeffersonian Publishing Co. v. Hilliard, 105 Ala. 576, 17 So. 112; City of Demopolis v. Marengo County, 195 Ala. 214, 70 So. 275; Fountain v. State, 210 Ala. 51, 97 So. 59; Converse Bridge Co. v. Geneva County, 168 Ala. 432, 53 So. 196; State ex rel. Norwood v. Goldsmith, 162 Ala. 171, 50 So. 394.

"Defining the line of distinction between judicial and ministerial functions, it was said by this court, in Grider v. Tally, 77 Ala. 422 [54 Am.Rep. 65]: 'Judicial power is authority vested in some court, officer, or

person, to hear and determine when the rights of persons or property, or the propriety of doing an act, are the subject-matter of adjudication. Official action, the result of judgment or discretion, is a judicial act. The duty is ministerial when the law exacting its discharge prescribes and defines the time, mode, and occasion of its performance with such certainty that nothing remains for judgment or discretion. Official action—the result of performing a certain and specific duty, arising from fixed and designated facts—is a ministerial act;' citing authorities. Throop, Pub. Off. §§ 535, 538, 539; Flournoy v. Jeffersonville, 17 Ind. 169 [79 Am.Dec. 468]; 14 Am. & Eng. Enc. Law, 100, in note." Merlette v. State, 100 Ala. 42 (44), 14 So. 562, 563; State v. Bradley, 207 Ala. 677, 93 So. 595, 26 A.L.R. 421.

A failure by an administrative body to apply a clear unequivocal standard fixed by law is not judicial but administrative. Grider v. Tally, supra.

When an appeal is taken under section 204 (H), the factual finding by the director of the matters which enter into the calculation of the employer's wage percentage rate is triable de novo. When that finding is shown not to be erroneous, as here by stipulation (except as to the maritime workers), the process thereafter throughout the formula is administrative. The director redetermines the contribution rate on that basis. If he did not make any mistake in the finding of facts which is here virtually agreed upon, but his mistake was administrative, it may be corrected in the redetermination, as in any proceeding in which the amount of the employer's contribution is under judicial inquiry. Such was held in the Moore case, supra. The mistake was in not observing the four quarter period under section 193. The redetermination is a mixed question of law and fact. 30 Amer.Jur. 145, note (15).

Under section 204 (H) the director or the court, on appeal, must observe the correct administrative process, after the facts are tried de novo and found. To do this on a four quarter period as required by law does not require a review of any fact judicially determined. The trial de novo is of the matters to be judicially determined by the director, and does not embrace his administrative processes. But the latter are not conclusive, regardless of an appeal.

Under section 243, Title 26, any administrative error in the process is subject to correction. I think it is inaccurate to say that it means only an error of calculation after the contribution rate is ascertained. It does not so declare. It specifies any error in the amount collected. That does not mean an error in the judicial process of finding the facts, because that may only be corrected on appeal under section 204 (H). When no appeal is taken, the facts as found cannot afterwards be inquired into. But if at any time within four years an administrative error is found in the process it may be corrected under section 243.

This result does not make a different state factor for different employers. It does for the benefit of all employers correct an error in calculating the state factor as an administrative process when it is judicially questioned. That same error is open to the benefit of any employer who seeks it under section 243, or when he is sued under section 240.

The question here is whether this employer has been injured in figuring the amount of his contribution by reason of the administrative error in not observing section 193, equally applicable to all employers.

No employer can complain if the error carried throughout the process did not increase the proper amount of his contributions. This principle has been so declared by the Supreme Court of the United States, and applied in tax appeals. It is said: "That a decision of the Board of Tax Appeals is based on an erroneous rule of law, will not justify its reversal by a Circuit Court of Appeals, if the findings of fact, governed by the correct rule of law, are sufficient to sustain the decision and have substantial support in the evidence." 30 Am.Jur. 145; Helvering v. Gowran, 302 U.S. 238(8), 58 S.Ct. 154, 82 L.Ed. 224; 42 Amer.Jur. 687, note 2.

An employer is not entitled to a refund of $53,000, or any other amount, on account of an error, such as I have described which does not change the amount of his contributions from what it would be when properly calculated, and the error entirely eliminated.

## Maritime Workers.

I agree that if on appeal under section 204 (H) by an employer there is found an

error in the factual finding or in the administrative process which entered into and affected the wage percentage of *that* employer, not common to them all, and which should be corrected on that appeal, as illustrated in this suit by the error as to the maritime workers of this employer, it would be impractical to carry that error as to a single employer into the calculation of the state factor. True, that error affects that employer's benefit wages, and the state factor is affected by the amount of the benefit wages of all such employers combined and a change in that employer's benefit wages affecting his benefit wage percentage might in some degree affect the amount of the state factor. It happens in this instance that the error as to the maritime workers which affects this employer's benefit wage percentage appreciably would not affect the state factor, because it is such a small proportionate part of the elements making up that factor; and it is so agreed in this case. But there might arise a status when it would materially affect the state factor. But I do not think any such error should be considered as changing the state factor for the benefit of *that* employer whose appeal is under consideration. That would give him a different factor from that of other employers whether they may have appealed or not. On each appeal there is a redetermination of that employer's contribution rate, involving his benefit wages. That redetermination cannot be worked into that of each other employer who may have separately appealed. Each such appellant is entitled to a de novo trial of his benefit percentage, necessarily including his benefit wages. Each may show on his separate appeal an error differing from that of other appellants. That, if carried into the state factor, would affect it only as to him whose rate is being redetermined. Each such appellant could have a different state factor and it could be different from that of those employers who did not appeal.

To carry an error affecting the benefit wage percentage of each separate appellant into the state factor on his separate redetermination would complicate the situation to where it would not be practical or evenly applied and therefore probably not intended by the legislature. When the error of the director *affects all employers on the same basis and so that by correcting it the state factor shall be* the same for all alike, whether they appealed or not, it would be practical and not complicated, but fair to all.

So that the error presently considered as to the base period is equally available to all employers and it may be corrected either (a) by the director on his own initiative under section 243, supra, or (b) when there is a redetermination on an appeal under section 204(H) when there shall have been a review of the judicial features of the process, or (c) when an employer calls for such redetermination on the basis of the elimination of that error as he may do under section 243 or sometimes under section 240.

The result is that the judgment of the trial court should be corrected in respect to the error relating to the base period and affirmed in respect to the error relating to the maritime workers.

## On Rehearing.

BROWN, Justice.

The term "state experience factor" properly interpreted in the light of the provisions of the "Unemployment Compensation Act" embodied in Chapter 4, Title 26, Code 1940, imports just what these words mean, *a factor,* based on the factual experience of all employers and their employees operating within this state coming within the influence of the act, *a factor or yard stick,* by which the contribution rate of the taxpayers—the *employers and their employees*—in the light of the factual experience of each employer and his employees, is to be determined.

The state experience factor is not a mere arbitrary mathematical calculation based on thin air, but is an ascertained percentage set up on a factual basis of experience in business, of wages paid, wages received, claims paid for unemployment, depending upon periods, hours worked, and the needs of the trust fund to meet the demands of unemployment and social security. Without this factual basis for levying the tax the levy would be purely arbitrary and could not be sustained on any principle of constitutional law.

Section 204, Subsection (E), prescribes the basis for setting up the "state experience factor" and how and when the director shall proceed. It provides: "From the total amount of benefits paid from the unemployment compensation fund during each calendar year there shall be subtracted

all amounts credited to the fund during each such calendar year other than employers' and employees' contributions, and the remainder shall be termed the 'amount required for the fund' for each such calendar year. The 'state experience factor' *for each calendar year* shall be a percentage determined by dividing *the total of the amounts required for the fund for the three most recent calendar years by the state-wide total of benefit wages of all employers for the three most recent calendar years* and by adjusting to the next higher multiple of one percent. The state experience factor *shall be determined annually prior to the fifteenth day of March of the calendar year for which the determination is made.*" [Italics supplied.] The language of the statute emphasized, clearly indicates the scope of the factual inquiry essential to a fixation of the "state experience factor," and that once determined it applies uniformly to all taxpayers for the tax year, and that the legislature did not contemplate or authorize any refixation, or setting up of a yard stick for one or more taxpayers, not applicable to all, merely to neutralize the errors and mistakes of the director in computing the contribution rate of a single taxpayer.

Section 193, defining the "base period * * * of an individual's benefit year," has nothing to do with the fixation of the "state's experience factor," except as it enters into or influences "the state-wide total of benefit wages of all employers for the three most recent calendar years."

 The appellant, through counsel, as we construe the brief filed with the application for rehearing, concedes that the state experience factor rests upon a factual basis, but he contends, to quote from his brief: "For example, if the parties had not stipulated the fact of the result of a finding by the Director of the State factor based upon the four quarter period, *the burden would have been cast upon the Director to first determine the facts.* This determination would be conclusive when presented to the Court unless impeached for fraud. *In other words the only testimony which would be presented to the Court would be the Director's findings of fact.*" [Italics supplied.] The substance of this contention is, pending the hearing of the taxpayer's appeal if an error of the director in ascertaining the taxpayer's contribution rate has been exposed, the statute authorizes the director to make an *ex parte finding of fact,* which is binding upon the court and the taxpayer, who has no voice in such determination and has no right to offer proof in respect to the factual basis of such finding. The statute so construed would violate the due process clause of the constitution. Due process of law implies, among other things, the right to contradict by proof every material fact which bears on the question of right involved. 2 Mayfield's Dig. p. 723, § 831; Zeigler v. South & N. A. R. Co., 58 Ala. 594; 12 Amer. Juris., pp. 267, 271, §§ 573–575.

The state experience factor of 13% for the year 1941–1942, was applicable to the Metcalf case, and the director made the contention in that case, in accord with the holding of the majority opinion in this case, that the state experience factor was not subject to redetermination, stating two reasons therefor. We quote from the brief filed December 30, 1943, "Proposition No. 7":

"The method of calculating the tax rate as contended by appellants is administratively impossible because the records on which it rests are non-existent and were neither established nor required to be kept by the then existing law. (Citing the statutes.)

"Proposition No. 8. The method of calculating the tax rate as contended for by appellants, if it were possible would involve an enormous additional expenditure to accomplish what is already achieved by the Director's method of calculation, namely, to replenish the Trust Fund with the amount needed based upon past experience. (Citing the statute.)"

The fact that the Legislature made no provision for the preservation of the records containing the factual data, the basis for determining the state's experience factor, is conclusive that it did not intend that such factor should be changed after the fifteenth of March of the year in which it was set up and declared. Assuming that the statement of the director in the Metcalf case, that such records were nonexistent, and that a resurvey "would involve an enormous additional expenditure to accomplish what is already achieved by the Director's method of calculation," the situation sustains the holding that the statute did not contemplate or authorize a resurvey of the facts on the appeal of a taxpayer, on which appeal the statute limited the review to his contribution rate.

To state briefly the scope of the factual inquiry, the calendar years 1938, 1939 and 1940 constitute the time element to be reviewed in order to establish the state experience factor for the tax year beginning April 1, 1941. This means it would be necessary to review the Department's records for each individual employee covered by the Act and ascertain his earnings for each of the calendar quarters involved in the three year period.

In 1938 there were 350,000 (estimated) workers covered by the Act.

In 1939 there were 377,300 (actual) workers covered by the Act.

In 1940 there were 488,600 (actual) workers covered by the Act.

The number of covered workers for the years 1939 and 1940 are taken from information furnished by Director Frank R. Broadway. The number of covered workers for the year 1938 is estimated, conservatively, we think, at 350,000. Employer payroll reports are furnished the Department quarterly, or 4 reports for each calendar year. 350,000 multiplied by 4 equals 1,400,000, or the number of individual items to be checked and verified with respect to employees alone in undertaking to reestablish a State Experience Factor. 377,300 multiplied by 4 equals 1,509,200, or the number of individual items to be checked and verified with respect to the year 1939. 448,600 multiplied by 4 equals 1,794,400, or the number of individual items to be checked and verified with respect to the year 1940. This makes a total of 4,703,600 individual employee items with respect to calendar quarter earnings for the years 1938, 1939 and 1940. The second essential step in the computation would be to compare each of the individual employee slips with the original quarterly payrolls furnished by every employer to the Director in order to see if typists, in transcribing employee earnings from employer's payroll records to the individual employee wage slips, made any errors in transposition. This would require comparing each individual wage slip of every employee covered by the law for the three calendar years under review with the original payroll record of every employer in the state, which of itself would be a matter of several million comparisons.

This makes plain and irrefutable the wise provision of the legislature that the only review authorized under the Unemployment Compensation Act is the employer's benefit wage percentage, and his contribution rate as fixed by his benefit wage percentage, specifically set out in Section 204 (H). Evidently, the director at the time of filing his brief in the Metcalf case, in fact realized this stupendous task when he there took the position that such a procedure was impossible to follow.

Moreover, it is apparent from the annual report of the Director of Industrial Relations to the Governor for the Fiscal Year ending September 30, 1942, matters of which the court takes judicial notice, as stated in brief filed in the Metcalf case: "That a variation of as much as $7,000,000.00 in benefit wages paid throughout the State of Alabama would not have the effect to change the state experience factor one iota. In the Fourth Annual Report of the Department of Industrial Relations to the Governor of Alabama, for the fiscal year ending September 30, 1942, on pages 24 and 25, appear the computations of the State Experience Factor for 1941 and 1942. Actually, the factor for 1941 was 12.32% and only because of the requirement of 'adjusting to the next highest multiple of one per cent (1%)' [Section 204(E)] was it stated to the 13%. The amount required for the fund for the years 1938, 1939 and 1940, or 'D' in the formula was $16,447,159.63. That amount is fixed, it is the amount of contributions or taxes actually required for the fund to pay benefits to claimants in the years 1938, 1939, and 1940. That amount is only 12.32% of the maximum liability, that is the state-wide total of benefit wages of all employees for the same three most recent calendar years, namely, $133,543,984.21. Mathematically expressed $\dfrac{D}{C} = \dfrac{16,447,159.63}{133,543,984.21} = 12.32\%$. Since the numerator is fixed by actual payments, it will be seen that the denominator C could be changed by subtracting as much as 7,027,371.90 without increasing the percentage above 13%. In other words, if we say: $\dfrac{D}{C} = \dfrac{16,447,159.63}{126,516,612.31} = 13\%$, the State Experience Factor would still remain, 13%. We may conclude that a very material change can be made in the denominator C without affecting the State Experience Factor."

On the other hand a slight error in calculating the taxpayer's benefit wages might materially affect his contribution rate.

The scope of the inquiry here is limited to the individual taxpayer's experience.

It is further insisted that the rule of strict construction should not be applied to the procedural provisions of the statute. In the majority opinion we cited Westenhaver v. Dunnavant, 225 Ala. 400, 143 So. 823, written by Justice Gardner, now Chief Justice, applying that rule which has long existed in Alabama. It was declared by this court in Crowder v. Fletcher & Co., 80 Ala. 219, 222, speaking through Stone, C. J.: " * * * 'statutory remedies, especially when the right to be enforced was unknown to the common law, are to be followed with strictness both as to the methods to be pursued, and the cases to which they are applied.' * * * " A more concise statement of the rule is found in Westenhaver v. Dunnavant, supra: "And statutory remedies for rights unknown to the common law are to be strictly construed."

But it is also contended in the application for rehearing that a mistake of law by the Director is not beyond judicial review, citing Ex parte Alabama Textile Products Corp., 242 Ala. 609, 7 So.2d 303, 308, 141 A.L.R. 87, a hearing on petition for common law writ of certiorari to review the action of the Board of Appeals, Division of Unemployment Compensation Commission, Department of Industrial Relations of the State of Alabama. The court in that case observed: "We have firmly adhered to the principle that on certiorari to an inferior jurisdiction this Court will only consider questions of law. But if such tribunal misapplied the law to the facts as found by it, or if there was no evidence to support the finding, a question of law is presented which should be thus reviewed. (Citing Authorities.)"

A review of authorities cited to support the quoted statement is to the effect that if the conclusion of fact of the acting official, court or body is without material evidence to support it; or if the inferior tribunal, court or body states all the facts but misapplies the law to the facts, this court on certiorari will quash such conclusion. We quote from the opinion in the last cited case:

"Our conclusion is that the Appeals Tribunal and Board of Appeals did not correctly apply the law to the facts which they found and which were agreed to be true.

"It results that the order of both the Appeals Tribunal and the Board of Appeals affirming the conclusion of the deputy examiner are contrary to the law, as is also the conclusion of the deputy examiner. It is therefore ordered that all those orders be and they are hereby quashed and held for naught."

We have found no case holding that this court on certiorari will enter into a determination of facts or authorize such redetermination. See Ex parte City of Birmingham, 199 Ala. 9, 74 So. 51; City of Birmingham v. Southern Bell Tel. & Tel. Co., 203 Ala. 251, 82 So. 519; Ex parte Slaughter, 217 Ala. 515, 116 So. 684.

However, a complete answer to this suggestion is that, we are not here reviewing the finding of the director on common law writ of certiorari. We are reviewing the judgment of the Circuit Court of Mobile County on a direct appeal and the circuit court to which the taxpayer appealed under Section 204(H) is a court of law, not a court of equity, and the statute which authorizes the appeal limits the scope of that appeal.

It has also been intimated in some of the briefs that the holding of the majority in this case leaves the director with irrevisable power in setting up and administering the trust, leaving a door open to abuse and fraud, against which the taxpayer and others interested in the trust would be without remedy. This intimation is fallacious. If abuse or fraud intervene in the administration of the trust, a court of equity would, no doubt, have ample power to take charge and administer it until a new director could be selected.

The application for rehearing is without merit and is due to be overruled. It is so ordered by the court.

THOMAS, LIVINGSTON, and STAKELY, JJ., concur.