Under a contract dated January 15, 1979, McCoy Manufacturing Company (McCoy), a Delaware Corporation with its principal place of business in Sulligent, Alabama, acquired certain assets of Vernon Manufacturing Company (Vernon), an Alabama Corporation and a wholly owned subsidiary of Spencer Industries, Inc., a Delaware Corporation. The assets which McCoy received consisted of the land, building, machinery, equipment, office furniture, and fixtures of a plant which Vernon operated to cut, make and trim men's pants. McCoy did not acquire from Vernon its management, customer lists, trade secrets, accounts receivable, cash, merchandise inventory, employment contracts, or good will. McCoy did, however, agree to complete any garments which Vernon would not be able to finish prior to the time of the change in ownership.
Subsequent to this transaction, the Alabama Department of Industrial Relations determined that McCoy was a successor employer within the provisions of Code 1975, § 25-4-8 (a)(4)a. Accordingly, the Department referred to Code 1975, § 25-4-54
(i), to calculate the amount which McCoy would contribute to the state unemployment compensation fund in 1980. Acting under § 25-4-54 (i), the Department combined the *Page 1148 
benefit wage record of McCoy with the benefit wage record of Vernon for the years 1977, 1978, and 1979. McCoy's employment record for these three years was excellent and its rate of contribution was low. Vernon, on the other hand, had a poor employment record and a very high contribution rate. When these two records were combined, the result was a large increase in McCoy's rate of contribution for 1980.
McCoy protested the increase and was granted an administrative review. This review resulted in a finding that the rate increase had been properly assessed, and McCoy sought a trial de novo in circuit court as allowed under Code 1975, §25-4-54 (h). The trial judge, construing § 25-4-8 (a)(4)a, held that McCoy was not a successor employer and reversed the decision of the Industrial Relations Department. The Department then appealed.
Since the facts in this case were presented without substantial dispute, the only issue we need to decide is whether the trial judge misapplied the law in finding that McCoy was not a successor employer to Vernon within the meaning of § 25-4-8 (a)(4)a. Under the provisions of that section, set out in pertinent part below, McCoy could achieve "successor status" by acquiring either (1) the organization, (2) the trade or business, or (3) substantially all the assets of Vernon.
Section 25-4-8 (a)(4)a provides inter alia as follows:
 "(a) `[E]mployer,' as used in this chapter shall mean:
. . . . .
 "(4) Any employing unit . . . (whether or not an employing unit at the time of acquisition) which:
 "a. Acquired the organization, trade or business, or substantially all the assets thereof, of another employing unit which at the time of such acquisition was an employer subject to this chapter. . . ."
We must consider, then, whether the trial judge correctly applied these three criteria to the Vernon-McCoy transaction. In doing so, we will interpret § 25-4-8 (a)(4)a "strictly" against the Department. As stated by the Court of Civil Appeals in State Department of Industrial Relations v. McElrath Farms,Inc., 348 So.2d 252, (Ala.Civ.App. 1976), rev'd on other grounds, 348 So.2d 257 (Ala. 1977): "The unemployment compensation statute is a taxing statute and as all taxing statutes, it is to be strictly construed against the taxing authority. Broadway v. Alabama Dry Dock Shipbuilding Co.,246 Ala. 201, 20 So.2d 41."
Looking first at whether McCoy acquired the "organization" of Vernon, we agree with the trial judge that State v. Gibson'sBarbecue, 369 So.2d 1229 (Ala.Civ.App. 1978), should control. In that case, the Court of Civil Appeals held that an employer, under the terms of § 25-4-8 (a)(4)a, cannot acquire the "organization" of another employer without first acquiring the management of the other employer. The Court of Civil Appeals pointed out that the management component of a business is one of the "`vital, integral parts required for continued operation.' Michigan Employment Sec. Comm'n v. Arrow PlatingCo., 10 Mich. App. 323, 159 N.W.2d 378 (1968)."
The fact that McCoy did not obtain or continue to employ any of the top management personnel of Vernon is uncontradicted. As a result, the trial judge correctly found, via the rationale ofGibson's Barbecue, that the "organization" of Vernon did not pass to McCoy.
The trial judge also decided that McCoy did not acquire the "trade or business" of Vernon. We agree, finding that Gibson'sBarbecue is again determinative. "Within the context of the statute [§ 25-4-8 (a)(4)a], acquiring the `trade or business' implies a transferral of a specific market or clientele from the former to the new." State v. Gibson's Barbecue, supra.
The Department argues that there was, in fact, a transfer of a "specific market or clientele" (and thus an acquisition of "trade or business" under the reasoning of Gibson's Barbecue)
because McCoy had completed, in accordance with the purchase agreement, an order of garments left at the *Page 1149 
plant by Vernon. The order had been placed by Spencer, Vernon's parent company, and had not been finished by Vernon at the time McCoy took over the operation of the plant.
However, we view McCoy's work on this order as merely a necessary step which had to be taken in the transition to McCoy's method of operation. As Coy Glenn, the President of McCoy, testified, regarding the reason McCoy had agreed to finish the garments:
 "Well, in any situation where you have an on-going work flow of work and in a factory, there's no way to have an exact day just to cut off everything. I had to start feeding my work in as you feed the other work out. And, naturally, some of it was in components and cut parts and so forth.
 "So, we were obliged to do this type operation or either have a complete close-out and clean-out of all the facilities. This was a necessary exercise rather than one that was just for everybody's convenience."
The record also shows that there was never any agreement between McCoy and Vernon by which McCoy would succeed to the right of supplying garments to any of Vernon's customers. In fact, the completion of Spencer's "left over" order is the only contact McCoy ever had with any of the clientele which Vernon formerly served. McCoy assumed the responsibility of completing Spencer's order only because it was the most efficient and expedient way to change over to a new system of plant operation.
Finally, we consider whether McCoy acquired "substantially all of the assets" of Vernon. The trial judge found that McCoy had acquired only 65% of Vernon's total assets and that 65% comprised far less than "substantially all."
We believe that the record presents ample evidence that McCoy did, in fact, acquire only 65% of Vernon's total assets. As revealed in the letter sent from Joseph O'Connell, Spencer's Vice President of Finance, to Coy Glenn, McCoy's President:
 "In answer to your requests for information, please be advised that at the time of the purchase of Vernon Manufacturing Company (a wholly owned subsidiary of Spencer Industries, Inc.), McCoy Manufacturing purchased the fixed assets of Vernon for a total purchase price of $625,000.
 "McCoy Manufacturing did not purchase other assets including Accounts Receivable, Merchandise Inventory, etc., with a total value of $337,519.
 "In other words, at the time of purchase McCoy Manufacturing purchased 65% of the total assets of Vernon Manufacturing Company."
We also find that the 65% figure was insufficient to constitute "substantially all the assets" within the context of § 25-4-8 (a)(4)a. However, we do so without the aid of State v.Gibson's Barbecue, supra. In Gibson's Barbecue no determination was ever made as to what constitutes "substantially all." Accordingly, we must look to another jurisdiction for guidance.
In the case of Auclair Transportation, Inc. v. Riley, 96 N.H. 1,69 A.2d 861 (1949), the New Hampshire Supreme Court, interpreting statutory language identical to that contained in § 25-4-8 (a)(4)a, defined "substantially all" as follows:
 "The word `substantially' is necessarily an elastic term which does not indicate a definite, fixed amount of percentage. At one extreme it may be said that the transfer does not have to be 100%. At the other extreme it may be said that the transfer cannot be less than 90% in the ordinary situation. . . ."
While we do not necessarily adopt the 90% test used in Auclair,supra, we believe that McCoy's acquisition of 65% of Vernon's assets should not be categorized as "substantially all."
We hold, then, that the trial judge correctly determined that McCoy did not "succeed" Vernon under the provisions of § 25-4-8
(a)(4)a, and that the increase in McCoy's unemployment tax rate was unwarranted. Further, we consider our decision *Page 1150 
as being in line with the objectives which underlie the unemployment compensation tax. One of the maxims upon which the tax should operate is that employers who act toward stabilizing employment will be rewarded with a lower rate of contribution to the compensation fund. "[I]t is considered advisable to reward an employer with good employment records by giving him a favorable rating and thereby reducing his payment. . . ."Pariseau Corp. v. State, 102 N.H. 364, 156 A.2d 753 (1959). To uphold the increase in McCoy's tax rate would serve to penalize, not reward, an employer which has demonstrated its ability to maintain an excellent employment record. See, Judge Holmes's dissent in State v. Gibson's Barbecue, supra.
Accordingly, the judgment below is due to be and is hereby affirmed.
AFFIRMED.
TORBERT, C.J., and FAULKNER, EMBRY and ADAMS, JJ., concur.