16 So.2d 787

**METCALF et al. v. DEPARTMENT OF INDUSTRIAL RELATIONS et al.**

3 Div. 407.

Supreme Court of Alabama.

Feb. 3, 1944.

Rehearing Denied March 2, 1944.

Hill, Hill, Whiting & Rives, of Montgomery, for appellants.

Lange, Simpson, Brantley & Robinson, of Birmingham, and Richard J. Demeree, Counsel for State Department of Industrial Relations, of Montgomery, for appellees.

304

Smith, Hand & Arendall, of Mobile, amici curiae.

STAKELY, Justice.

This is a proceeding to determine the correct contribution rate to be paid by W. H. Metcalf, J. T. Chesser, Jr., and Alto Davis, partners, doing business as Auto Parts & Tool Company (appellants), under the Alabama Unemployment Compensation Law for the period beginning April 1, 1941, and ending March 31, 1942. The Director of the Department of Industrial Relations fixed the rate at 1.0 per cent for the employer and 0.3 per cent for their employees. Appellants appealed from such determination to the circuit court, where the case was submitted on an agreed statement of facts. § 204(H), Title 26, Code of 1940. Report of the case will show the salient features of the agreed statement of facts. The trial court found and held that the contribution rate fixed by the Director of Industrial Relations was correct and lawful and entered judgment against appellants. This appeal is from that judgment.

At the outset it is insisted by the appellees that these proceedings constitute a suit against the State of Alabama, which is prohibited by § 14 of the Constitution of Alabama, which is as follows: "That the State of Alabama shall never be made a defendant in any court of law or equity."

This contention is not tenable. These proceedings are in effect only an appeal from the order of the Department of Industrial Relations and John D. Petree, as Director of Industrial Relations, pursuant to § 204(H), Title 26, Code of 1940, to determine the correct rates which should govern in making contribution to the unemployment compensation fund. This is not forbidden by § 14 of the Constitution. Curry v. Woodstock Slag Corporation, 242 Ala. 379, 6 So.2d 479; State v. Louis Pizitz Dry Goods Co., 243 Ala. 629, 11 So.2d 342.

In order to understand the case, it is necessary first to comprehend as clearly as possible the unemployment compensation program and especially the tax reduction plan known as experience rating.

Unemployment compensation is a combined federal and state program. The Congress enacted the Social Security Act on August 14, 1935, 42 U.S.C.A. § 301 et seq., and on September 14, 1935, Alabama became the first state to enact an unemployment compensation law, General Acts 1935, page 955. The purpose of unemployment compensation is to provide an income for involuntary unemployed workers during their unemployment and in order to achieve this result, contributions in the form of taxes are necessary to provide the special trust fund from which such benefit payments are made to the unemployed. Chapter 4, Title 26, Code of 1940.

The federal law, 42 U.S.C.A. § 1101; 26 U.S.C.A. Int.Rev.Code, § 1600, provides that on and after January 1, 1936, every employer shall pay for each calendar year an excise tax equal to the following percentages of the total wages payable by him with respect to employment during such calendar year:

(1) With respect to employment during the calendar year 1936 the rate shall be 1.0 per centum;

(2) With respect to employment during the calendar year 1937 the rate shall be 2 per centum;

(3) With respect to employment after December 31, 1937, the rate shall be 3 per centum.

It further provides, 42 U.S.C.A. § 1102, that the taxpayer may credit against the tax the amount of tax paid by him under a state unemployment compensation law up to a total credit of not exceeding ninety per cent of the federal tax, and further that if the taxpayer gets a lower rate of tax under a state law on the basis of not less than three years of compensation experience,

the taxpayer may nevertheless get an additional credit against the federal tax of the amount which he would have been required to pay, under the state law, if he had been subject to the highest rate applicable, the total credit not to exceed ninety per cent of the federal tax, 42 U.S.C.A. §§ 1109, 1110; 26 U.S.C.A. Int.Rev.Code, §§ 1601(b, c), 1602.

So it can be seen that the federal act provides an inducement to the states to enact unemployment compensation laws and through a tax reduction plan offers an incentive for the state law to provide for experience rating based upon an employer's experience or employment record.

The original Alabama Unemployment Compensation Law, General Acts 1935, page 955, § 4, had contemplated that, beginning in 1941, future rates would be based on benefit experience. By the amendment approved September 21, 1939, the Governor was directed to appoint a committee to make a study of experience rating. General Acts 1939, page 731, Amending Act of 1935, § 4(c). A formula was first enacted into law by the adoption of the Code of 1940. This case involves that formula. § 204, Title 26, Code of 1940.

In order to comprehend the formula it is first necessary to be able to think in terms of the technical expressions which are used in connection with the formula. These technical expressions are defined by various statutes which form the dictionary of the act. For convenience, we set out these statutes as follows:

"§ 180. Benefits.—'Benefits' as used in this chapter, means the money payable to an individual with respect to his unemployment as provided in this chapter."

"§ 182. Contributions.—'Contributions', as used in this chapter, means the money payments to the state unemployment compensation fund required by this chapter."

"§ 189. Fund.—'Fund', as used in this chapter, means the unemployment compensation fund established by this chapter, to which all contributions and from which all benefits required under this chapter shall be paid."

"§ 194. Benefit year.—'Benefit year', as used in this chapter, with respect to any individual means the fifty-two consecutive week period beginning with the first day of the first week with respect to which the individual first files a valid claim for benefits, and thereafter the fifty-two consecutive week period beginning with the first day of the first week with respect to which the individual next files a valid claim for benefits, after the termination of his last preceding benefit year. Any claim made in accordance with section 215 of this title shall be deemed to be a 'valid claim' for the purposes of this section if the individual has earned the wages for insured work required under section 213(E) of this title."

"§ 193. Base period.—'Base period', as used in this chapter, means the first four of the last five completed calendar quarters immediately preceding the first day of an individual's benefit year."

§ 204(A), Title 26 of the Code of 1940, provides that the contributions of each employer "shall be determined by the unemployment compensation fund's maximum liability for benefits to his employees who have received benefits, modified by the state experience as to average duration of benefit payments, as provided herein." This is an expression of the principle which is made effective by the mathematical formula in § 204(F), Title 26, Code of 1940.

It will be noted that this mathematical formula, by which the contribution rates are actually determined, consists of seven vertical columns. The first column is numbered consecutively 1 to 30 and from this column is to be selected the State Experience Factor for the year in question. The next five vertical columns are headed "Employer's Benefit Wage Percentage," and cover benefit wage percentage up to 340%. It is provided that:

"Such contribution rates shall be determined from the following table and shall be the rates, as indicated for employers and employees respectively, appearing at the bottom of the lowest numbered column in which there appears, on the same horizontal line in which is found in the column headed 'state experience factor', the state experience factor for the then calendar year, a percentage equal to or in excess of such employer's benefit wage percentage for the then calendar year. If no percentage equal to or in excess of such benefit wage percentage appears on said horizontal line the employer's contribution rate shall be two and seven-tenths percent, and the contribution rate of the employees of the said employer shall be one percent."

The employer's tax rate is graduated from 0.5% to 2.7%. The employee's tax rate is graduated from 0.1% to 1.0%. The

sum of the two is graduated from 0.6% to 3.7%. In the table the sum of the two, that is the employer's contribution rate and the employee's contribution rate at the foot of each column is arrived at by multiplying the State Experience Factor by the Employer's Benefit Wage Percentage. In other words, the product of the State Experience Factor multiplied by the Employer's Benefit Wage Percentage determines the employer's and employee's contribution rates, which are the rates of taxation.

For example, in the case at bar the State Experience Factor was found by the Director to be 13%. The Employer's Benefit Wage Percentage was found by the Director to be 5.1%. The horizontal line in the Table, Title 26, § 204(F), for the State Experience Factor of 13% reads:

| Col. 1 | Col. 2 | Col. 3 | Col. 4 | Col. 5 |
|--------|--------|--------|--------|--------|
| 5 | 10 | 15 | 21 | 26 |

The column must be selected in which appears on that horizontal line a percentage equal to or in excess of the Employer's Benefit Wage Percentage. If that percentage had been 5, Column 1 would have been selected, but since the Director found it to be 5.1, Column 2 must be selected, or the same as if the Benefit Wage Percentage had been 10. Now 10 x 13 = 130 and at the foot of Column 2 we find that the Employer's Contribution Rate for that column is 1.0% and the Employee's Rate 0.3% or their combined rates 1.3%.

Subdivisions B, C, D and E of Section 204 explain how the two factors, "State Experience Factor" and "Employer's Benefit Wage Percentage", are calculated. For the purposes of this appeal, that part of Subdivision B relating to a "maritime worker" may be ignored, for no "maritime worker" is here involved.

In making the calculations provided for in the foregoing statutes for the period from April 1, 1941, through March 31, 1942, there is no difference between the parties to this appeal except as to the meaning of the term "base period." Appellants claim that throughout the calculations its meaning is defined by § 193, quoted supra. The appellees agree that that is its meaning for experience since October 1, 1939, but insist that for experience during the period prior to October 1, 1939, the meaning of "base period" is defined in Acts 1936–37, on page 215, as follows:

" 'Base Period' means the period beginning with the first day of the nine completed calendar quarters immediately preceding the first day of an individual's benefit year and ending with the last day of the next to the last completed calendar quarter immediately preceding any week with respect to which benefits are payable."

The problem is simplified if we consider that § 193 contemplates consideration of four completed calendar quarters, while the Act of 1936–37 contemplates consideration of eight completed calendar quarters. Based on his interpretation of "base period," the Director, as shown by the agreed statement of facts, used different base periods varying from three quarters to eight quarters depending on when the claims became compensable. The agreed statement of facts shows that this resulted in the inclusion of wages earned in parts of 1937. Appellants insist that he should have used one constant base period of four quarters. If appellants are correct, part of the $3,054.-21 of benefit wages listed in 1938 would not be considered, because earned in 1937, with the result that the Employer's Benefit Wage Percentage would be less than 5% and Column 1 would determine the tax rate which would be 0.5% for the employer and 0.1% for the employees, instead of 1.0% for the employer and 0.3% for the employees. Hence decision in the case depends upon which party is correct in the meaning of "base period."

At the outset there is one insistence on the part of appellees which should be considered. Appellees argue that if the method contended for by appellants is adopted, there is no difference in practical results and appellants' case is at most one of wrong without injury. But we are governed by the record, which must prevail. The agreed statement of facts contains the following stipulation:

"6. It is further agreed that if the method used by the Director in determining the benefit wages, as set out herein, is correct that the contribution rate determined by the Director for the appellant is correct. It is further agreed, however, that if the method of determining the benefit wages is incorrect that the contribution rate as determined by the Director is excessive and should be redetermined in accordance with the court's decision."

Appellees further contend that § 193 should not be grafted into the plan set

forth in § 204 because historically they have no connection. They point out that the 1940 Code, which became effective May 31, 1941, was prepared under a statute enacted by the 1939 Legislature; that the Code Committee had no authority to legislate; that Alabama had never had a statute on experience rating; and that when the report of the Code Committee was made to the Legislature, the Legislature amended the report by inserting § 204 in Title 26, but failed to revamp all the other provisions of Title 26 with reference to experience rating. Therefore, it is argued, there was no legislative intent to encumber § 204 with § 193, because only by accident do these sections have any constructional relationship. We cannot agree. The Act of 1939, which first embodied the definition of base period as being four quarters, used the following language for what is now § 193:

" 'Base Period' means the first four of the last five completed calendar quarters immediately preceding the first day of an individual's benefit year."—Gen.Acts 1939, p. 721 at p. 728.

When this was made a part of the Code of 1940, as § 193 of Title 26, the following language was used:

" 'Base period', as used in this chapter, means the first four of the last five completed calendar quarters immediately preceding the first day of an individual's benefit year."

The section as placed in the Code contained the additional words "as used in this chapter." Since §§ 193 and 204 are both in Chapter 4 of Title 26, this strongly indicates an intent that the definition of "base period" as set forth in § 193 was intended to apply to § 204. This construction is substantiated by the principle that unless a uniform period of time is used for all elements in the formula, the formula has no worth as a percentage formula. The point, accordingly, has now been reached in the discussion when the mathematical phase of the case should be analyzed more fully to understand the application of the foregoing statement. Further consideration of the mathematics involved will also aid in interpretation of other portions of the statute.

■■ The first step in the mathematical problem, provided for by § 204(D), is to determine what per cent of the total wages paid by the individual employer was paid to the employees who made claims for compensation. As a simple illustration, if the employer paid during the years 1938, 1939 and 1940, which is prescribed as the test period for the 1941 return, a total of $100,000, and those of his employees who made claims for compensation earned $10,000 of this $100,000, then 10% of the total wages paid, was paid to employees who made claims.

The next step, provided for by § 204(E), is for the purpose of determining what per cent of the total wages paid to all employees in the State of Alabama who made claims for compensation, was necessary to pay their claims for compensation. This per cent is called the State Factor. To illustrate simply, if all of the employees in the State, who made claims for compensation, earned during the years 1938, 1939 and 1940, $1,000,000, and it required $100,000 to pay their claims, then the State Factor would be 10%.

Having found out what per cent of the total wages paid by an individual employer was paid to those who filed claims for unemployment and having determined from state-wide experience the average per cent of wages earned by all employees who made claims which was necessary to pay their claims, the per cents obtained by these two steps, as provided by § 204(F), are multiplied and reference is then made to the table, referred to above, to get the amount required to maintain the fund.

Considering again the first step above referred to, the language of § 204(D) calls for taking both items for a three-year period and it can have no meaning if either item is taken for a longer period. Total wages paid to those who made claims is the numerator and the total wages paid to all employees by the same employer for the same period of time is the denominator.

But the Director did not do this. He took the total wages paid by the employer for three years—1938, 1939 and 1940—which gives a denominator covering a period of three years. Then he increases the numerator by adding wages earned by those employees who made claims for an additional year, viz., 1937, making a total of four years. Yet the denominator was left the same. In this way the Benefit Wage Percentage was increased. In this way was violated the principle that a uniform period of time must be used in all elements in the formula.

The Director arrived at this result by his interpretation of "base period." While

his interpretation should be an aid to interpretation by the court, it is not controlling. State Board of Administration v. Jones, 212 Ala. 380, 102 So. 626. He did not accept the definition of "base period," which means four calendar quarters, for the period prior to October 1, 1939, but for that period turned back to the definition of the Act of 1937, which treated "base period" as consisting of eight calendar quarters. He used a definition of "base period" which existed at a time when there was no such thing as experience rating. The Act of 1937 was repealed in 1939 and, as we shall see, the definition of "base period" in the Act of 1937 has no connection with experience rating.

The problem can be stated mathematically as follows:

Let A equal total wages paid by an employer for three years.

Let B equal total benefit wages paid by an employer for the same three years.

Let C equal state-wide benefit wages paid for the same three years.

Let D equal total amount that was actually paid to all claimants in the state for the same three years.

And let X equal the total per cent of the payroll to be paid by an employer and his employees.

The step provided for by § 204(D) is $\frac{B}{A}$ = benefit wage per cent. The step provided for by § 204(E) is $\frac{D}{C}$ = state experience factor, and the step provided for by § 204(F) is $\frac{B}{A} \times \frac{D}{C} = X$.

The Director contends that in using a "base period" of eight quarters for the period prior to October 1, 1939, he followed the mandate of the statute which is the last sentence contained in § 204(C), Title 26 of the Code of 1940, as follows:

"The director shall analyze the benefit payments made in and the employee and employer benefit wages for the calendar years 1938, 1939, and 1940, and for each calendar year thereafter and determine each employer's benefit wages for all such calendar years respectively."

It is insisted by the appellees that the Legislature intended for the Director to use the actual experience and avail himself of the actual departmental records of 1938, 1939 and 1940. It is further insisted that

the rates are to be determined by the amount of money that was necessary to replenish the fund and that therefore the same base period as used when an employee was paid should now be used in determining the amount of money necessary to replenish the fund.

But benefit wages are the employer's maximum liability for benefits and not the employer's actual benefit payments. Referring to the formula, it is obvious that the only element of the formula that is concerned with the amount paid to claimants is represented by D. D is not affected by the length of the base period. Only, items B and C are affected by the base period and B and C have nothing to do with the amount that was paid to claimants. Accordingly base period as used in the formula has nothing to do with the amount of money that was paid to claimants. It is used for the purpose of obtaining per cents. If the period of time for any element is varied, there is no true per cent. If a base period of eight quarters is used prior to October 1, 1939, and a base period of four quarters thereafter, then the mathematical formula is disrupted. It would be similar to a situation where a person undertook to determine what per cent of his total income from his business was required to pay the expense of operating. He would necessarily take the total income and the total expense for the same period of time.

It is clear that in determining the employer's benefit wage percentage the denominator of the fraction must be the employer's total taxable payroll for three years. § 204. When the base period of eight quarters was used, total payment during any one year were limited to one-sixth of total wages paid during those eight quarters. General Acts 1936–37, page 216. Under the 1937 law, it would take six years for the maximum liability to an employee to equal an employee's wages for a base period of eight quarters. Therefore a base period of eight quarters cannot be logically used in the numerator of the fraction, when the denominator of the fraction must cover a period of three years.

It is obvious that the expression "base period" means nothing unless a definition is given to these words. In the Act of 1937 base period had two functions. A claimant's weekly compensation was based on his earnings during the highest quarter of his base period and the total compensation that he could collect was limited to one-sixth of

the total wages which he earned during his base period. Base period under the Act of 1937 was used, therefore, to measure or limit the payment of compensation.

But base period after the amendment of 1939 and as used in the present Code, while it determines compensation for unemployment, is also used in the formula prescribed for experience rating. There was no experience rating contemplated by the Act of 1937 because it did not then exist. This is persuasive that the formula of the present law contemplates the definition of base period as contained in § 193.

We think that the language of § 204(C), quoted above, is given full consideration by appellants' construction of § 193.

 The Director further based his interpretation of the expression "base period" on the use of the word "his" in § 204(B), which we quote so the contention can be clearly seen.

"When in any benefit year an employee was first paid benefits after December 31, 1937, for total or partial unemployment, his wages during his base period, for employment after December 31, 1936, shall be the employee's benefit wages, * * *."

It is insisted by the appellees that the draftsman of the statute by the word "his" clearly intended to refer to the actual wages and the actual base period. But base period, as defined by § 193, is upon an individual basis and necessarily must be some particular employee's base period. We therefore do not agree with this insistence, especially since to do so would disrupt the mathematical formula.

Finally, it is contended that to give effect to appellants' construction of § 193 is to read out of the statute the last sentence of § 204(B), Title 26 of the Code, which is as follows:

"Wages once included in an employee's benefit wages for one benefit year or in an employee's wages for one base period shall not thereafter be included in his benefit wages for any other benefit year or in his wages for any other base period respectively."

The idea is that if only four calendar quarters are used, there would be no overlapping and hence no need for the prohibition contained in this sentence. However, we do not think that the purpose and logic of the mathematical formula should be destroyed merely to find a meaning for these words. Just as § 204(A) is but a statement of the mathematical formula which follows, so this sentence can be considered as saying in another way that "base period" as defined in § 193 shall be used. At the most the statement will be regarded as superfluous. If the statute be construed in accordance with the obvious intention of the Legislature, the court should not, merely to make certain words effective, give them a meaning that is repugnant to the statute as a whole and destructive of its purpose. Van Dyke v. Cordova Copper Co., 234 U.S. 188, 34 S.Ct. 884, 58 L.Ed. 1273.

We conclude that the definition of "base period" as defined in § 193 and as contended for by appellants is correct and that the Employer's Benefit Wage Percentage should be calculated in accordance therewith.

Reversed and remanded.

GARDNER, C. J., and BOULDIN and FOSTER, JJ., concur.