PRATT & WHITNEY AIRCRAFT CORPORATION OF MISSOURI, a Corporation, Appellant, v. UNEMPLOYMENT COMPENSATION COMMISSION OF MISSOURI and ELMER JOHN KEITEL, SR., HARRY P. DRISLER and CARL J. HENRY, Members of the Commission (two cases).—Nos. 39599 and 39600.—193 S. W. (2d) 1.

Court en Banc, March 11, 1946.

*L. M. Turner,* Special Assistant to the Attorney General of the United States, and *H. M. Langworthy* for appellant; *Langworthy, Matz & Linde* of counsel.

*Michael J. Carroll,* Chief Counsel, and *Charles F. Moseley,* Assistant Counsel, for respondents.

*Cobbs, Logan, Roos & Armstrong* for Associated Industries of Missouri, amicus curiae.

HYDE, J.—This is an appeal from the judgment of the Circuit Court of Cole County on a petition for review, affirming a decision of the Unemployment Compensation Commission; and also an appeal from the judgment of said Court dismissing an action for declaratory judgment in which the invalidity of the Commission's ruling was sought to be established. These two appeals have been consolidated.

The sole question presented is the constitutionality of subsection (j) added to Section 9427, R. S. 1939 in 1943. (Laws 1943, p. 915. For this Section as originally enacted, and all subsequent amendments see Section 9427, Mo. Stat. Ann.) This subsection provides for payment of unemployment contributions (by all employers commencing business during or after 1941) at the rate of 3.6 per cent, instead of 2.7 per cent (the beginning rate prior to the amendment), during the period between July 1, 1943 and June 30, 1945. Similar statutes known as war risk contribution acts have been adopted in other states for the purpose of preventing depletion of Unemployment Compensa-

tion funds from unemployment after the end of the war. In 1942, plaintiff commenced to operate a factory manufacturing airplane engines for the Navy; and what is actually involved herein is the right of the State of Missouri to collect from plaintiff for its Unemployment Compensation fund the amount representing the difference between contributions at the rate of 3.6% and contributions at the rate of 2.7%. Plaintiff contends that this amendment is retrospective in its operation, in violation of Section 15, Article II, Mo. Const. 1875; that it unlawfully delegates legislative powers to the executive department, in violation of Article III, Section I, Article IV, and Section I, Article X; and that it levies a tax which is not uniform upon the same class of subjects within the state, in violation of Section 3, Article X.

Both parties agree that the effect of this act is to make three classes of employers as follows:

The first class was composed of all employers, who had payrolls for each of the calendar years 1939, 1940 and 1941. Such employers paid a rate of 2.7% on that portion of their payrolls, which did not exceed their average annual payrolls of the 1939-1941 period by more than 50%, unless entitled to have a lower rate fixed by the Commission, on the basis of past employment experience, as provided in Section 9427(c) prior to the 1943 amendment. They paid 3.6% on the rest of their payrolls, if any, which did exceed their average annual payrolls of the 1939-1941 period by more than 50%.

The second class was composed of employers, who did not commence business prior to the 1939-1941 period, and therefore, did not have payrolls throughout that period, but did commence business prior to 1941. As to such employers, the Commission was authorized to establish an average annual payroll (by considering with other stated factors, hereinafter set out, their payrolls for at least two calendar years prior to 1943); or it could find that no annual average payroll could be established. An employer of the second class, for whom an average annual payroll could be established, paid a rate of 2.7% on this payroll, and on the excess thereof up to 50%, and 3.6% on the balance; all others paid 3.6% on their entire payrolls.

The third class was composed of employers who had not been in business for two full calendar years prior to 1943 (commenced business after January 1, 1941) and, therefore, did not have two prior years payrolls which could be compared to fix an average annual payroll. They were required to pay 3.6% on their entire payrolls.

 We will consider plaintiff's contentions in inverse order because we think that the matter of proper classification has an important bearing upon the determination of the other questions urged. Plaintiff contends that these are not valid classifications because it says they are not open classes, citing Hull v. Baumann, 345 Mo. 159, 131 S. W. (2d) 721; and State ex rel. Wiles v. Williams, 232 Mo. 56, 133 S. W. 1. It argues that these classes are closed, contending that

those in them are fixed at the time of the amendment which it claims improperly uses the time of commencing business as the sole basis for classification, citing Cape Girardeau v. Groves Motor Co., 346 Mo. 762, 142 S. W. (2d) 1040. However, we think that plaintiff's argument is based on a too narrow construction of the 1943 amendment. The question of proper classification for wartime unemployment compensation contributions cannot be considered apart from the entire scheme and purpose of the whole Section 9427, as it applied to normal times, as is done in plaintiff's brief.

The basic principle stated in the Act, upon which contributions from employers were to be computed, was their employment experience. It had been recognized from the beginning of this legislation that the risk of unemployment would be greater in the case of some employers than would be true of others. This was merely a recognition of obvious business experience. Therefore, the starting rate of contributions for all employers was fixed at 2.7%, Section 9427 (b) (1) (2), which were to be credited to a separate account for each employer, Section 9427 (c) (1). (References are to act as amended in 1943.) All employers were to pay this rate for at least 36 months; and rates were thereafter to be fixed by the Commission, on the basis of the employment experience of each during such preliminary period, Section 9427 (c) (3). If an employer made a poor employment record (if the benefits to employees paid out of his account, for a designated period were *greater* than his contributions) then his rate would go up to 3.6% for the next year. If he made a good record (benefits *less* than contributions) his rate would go down to 1.8% or to .9% (depending upon the percentage of excess) or even to nothing for the next year. Thus it is obvious that any of the employers in the first above described class (established in business prior to 1939) could get into the 3.6% class, after the enactment of the 1943 amendment, by a poor employment record just as they might have regardless of the war.

It is also apparent that there was no discrimination against employers commencing business after 1940 (as between them and employers with three years employment experience) in requiring them to pay a flat rate on their entire payrolls for a two year period. They would have had to pay a flat rate thereon for that period, and longer, without this 1943 amendment. So far as they were concerned, all that this amendment did was to increase this rate to 3.6%. Certainly there is no constitutional ground upon which a taxpayer can complain of such an increase in the rate of payments to be made in the future. Good reasons for holding that such an increase was reasonable and proper (in view of the impact of wartime conditions upon the unemployment risks of industry) have been stated in recent decisions in other states. [State v. Donovan, 218 Minn. 606, 16 N. W. (2d) 897; Buchsbaum & Co. v. Gordon, 389 Ill. 493, 59 N. E. (2d) 832.] These opinions clearly show that the date fixed was not arbitrarily chosen

without any just relation to the intended objects of this amendment; and that the classifications were not based solely upon the time element; but that the basis was the dividing line between normal prewar peacetime economy and abnormal war economy. Some date had to be set as the end of prewar economy, and a year fixed as the first year of wartime conditions. For the reasons stated in the above cases, 1941 was a logical year to choose. This is no more arbitrary than fixing the age of twenty-one as the end of minority. [See Carmichael v. Southern Coal and Coke Co., 301 U. S. 495, 57 S. Ct. 868, 81 L. Ed. 1245, 109 A. L. R. 1327.] Considering the whole plan of our Unemployment Compensation Act, these classifications seem fair and reasonable. The effect of war conditions on business and industry is obvious and well known. Some established businesses are not benefited or expanded but curtailed and hampered. Others, old and new, have vast expansion beyond the possibilities ■ of peacetime. Thus, employment conditions are abnormal; and some employers will go out of business, while others must reconvert to a normal peacetime basis, when the war ends. All this necessarily increases unemployment risks and justified a higher wartime rate.

Certainly, therefore, there was a reasonable basis for class one providing for employers, with such established business, to receive the full benefit of their prewar employment record, and likewise for requiring the wartime rate of 3.6% on the part of their payrolls in excess of 50% of the annual average of the three prewar years from those whose business had expanded. It was surely fair to give them the benefit of this previous good employment record on the basis of their average prewar payrolls. Likewise there was a reasonable basis for the second class in which there would be at least one prewar year to compare with a war year to determine the effect of wartime conditions on expansion of employment. This was a basis directly related to unemployment risks. These employers also would be in the 3.6% class as to part of their payrolls and could get into it as to all of them. As to the third class, we agree with the Supreme Court of Minnesota (16 N. W. (2d) l. c. 899) that ''it seems reasonable . . . that increased contributions to the fund, which faced possible depletion, should come from those who create the greatest hazards to it.'' Especially is this reasonable when the same principle is applied (of charging the highest rate to employers during the first years of their operation while they are building an employment experience record) as has always been applied to all employers commencing business in normal times. We hold that these classifications are reasonable, fairly adapted (on the basis of degree of risk) to secure the intended purpose of maintaining the solvency of the unemployment compensation fund and do not violate Section 3, Article X, Mo. Const. 1875.

■ In contending that the amendment unlawfully delegates legislative power, plaintiff cites State ex rel. Field v. Smith, 329 Mo. 1019,

49 S. W. (2d) 74, and similar cases, condemning grants of unlimited discretion without setting up any definite standards for application of the act. Plaintiff says that the following language of the amendment (relating to the second class of employers) allows the Commission to set its own standards and consider any factors it may deem "pertinent" in determining whether or not it should establish an average annual payroll for an employer in the second class, namely: "The Commission in establishing such average annual payroll or in determining that there is no average annual payroll within the meaning of this subsection, should consider *among other pertinent factors* the following: The annual payroll for any one or more calendar years prior to the date of determination by the Commission, the wages payable or paid for employment prior to the employing unit becoming an employer, the nature, location and type of business in which the employer is engaged, and shall give weight to the likelihood of an abnormal number of such employer's workers being unemployed and drawing benefits from the fund at the close of or during the present war emergency."

However, we think that the reasonable meaning of "other pertinent factors" is that the other factors to be considered are those previously made pertinent by being stated in the old subdivisions of Section 9427 prior to the amendment. These were the factors which the Commission always had to consider in determining employer's rates, such as amount of contributions paid into the fund, amount of benefits paid therefrom and the proportion between them. These were the normal pertinent factors to be considered in determining the basis of contributions. The other factors stated, in the part of the amendment hereinabove set out, were abnormal factors related to wartime conditions and expansion of industry for war production. They might not apply to a new firm or business, of the second class, which was not to engage in making essential war products. We hold that these additional standards are stated with sufficient certainty. [See Spitcaufsky v. Hatten, 353 Mo. 94, 182 S. W. (2d) 86.] We, therefore, hold that the amendment did not unlawfully delegate legislative power to the Commission.

What we have said demonstrates that the amendment did not operate retrospectively. It merely raised the rate of contribution to be paid in the future. It did not do this on the basis of closed transactions, as contended by plaintiff, or solely on the basis of conditions existing before it was enacted as in Murphy v. Limpp, 347 Mo. 249, 147 S. W. (2d) 420. Instead it provided only for the highest rate to be paid for the fixed period by an employer who had no previous employment record, upon which to base a lower rate, because he had not been in business long enough. Such a new employer could have no vested rights impaired when the same principle, as to starting rates, was applied to him in wartime as had always been applied to all new employers in peacetime; and no new burden was imposed with

respect to any past transaction or condition. [See Stouffer v. Crawford (Mo. Sup.), 248 S. W. 581; State ex rel. Ross v. General American Life Ins. Co., 336 Mo. 829, 85 S. W. (2d) 68; State ex rel. Jones v. Nolte, 350 Mo. 271, 165 S. W. (2d) 632.] Giving established employers a lower rate on part of their payrolls, on the basis of past employment records, is no more of a retrospective operation than giving a person an exemption from income tax on part of his income because of his past family record, namely: the number of dependents he has to support.

The judgments are affirmed in both cases. All concur.