42 So.2d 787

**DEPARTMENT OF INDUSTRIAL RELATIONS et al. v. WEST BOYLSTON MFG. CO.**

3 Div. 532.

Supreme Court of Alabama.
Oct. 6, 1949.

Rehearing Denied Nov. 17, 1949.

68

A. A. Carmichael, Atty. Gen., Aubrey Cates, Jr., Gen. Counsel, Department of Industrial Relations, Sp. Asst. Atty. Gen., Hugh F. Culverhouse, Asst. Atty. Gen., and Richard T. Rives, Sp. Counsel, of Montgomery, for appellant.

Steiner, Crum & Weil and Sam Rice Baker, of Montgomery, for appellee.

FOSTER, Justice.

This case was before the Court previously. Carnley v. State ex rel. West

Boylston Mfg. Co., 250 Ala. 403, 34 So.2d 681.

The first question argued in brief by appellants relates to the meaning and validity of section 243, Title 26, Code, as measured by certain provisions of the Constitution and in connection with section 204 (H), Title 26, Code, as construed by this Court.

Appellee, claiming the benefit of section 243, supra, filed its petition with the director on August 18, 1947, for a refund of certain contributions to the unemployment compensation fund as set up in section 197, Title 26, Code. The contributions were paid in 1944, and alleged to have been erroneously collected and, therefore, to be subject to refund under section 243, supra, which in terms allows such a petition to be presented and determined by the director for contributions erroneously collected within four years. There was a denial by the director and on appeal to the circuit court that court reversed and ruled that the said contributions were erroneously collected, and ordered either a refund by the director or an allowance of credit on future payments.

The claim of appellee is based on a contention that an amendment made June 28, 1943, to section 204(G) of Title 26, Code, by adding No. 6 violates section 45 and other provisions of the Constitution. That amendment makes provision for a larger contribution rate on "Excess Wages". No application was made for a redetermination of the amount of wages taxable at the reduced rate, which is provided for in section 204(H) to be made within sixty days of the date of mailing by the director to the employer of the notice of the determination of that matter by the director.

The question posed by the appellants, now considered, is whether section 243, supra, permits such an application within four years when no application was filed within sixty days under section 204(H).

That statute looks to an existing status before the contributions shall be made. It authorizes procedure to settle disputes with respect to the basis of computation by which the amount of the contributions shall be determined and provides for a redetermination when that made by the director is erroneous. It does not provide for a refund because it does not relate to contributions which have already been made. If a redetermination is finally made on the basis of such application, resulting favorably to the employer, contributions made pending such review may be adjusted or refunded pursuant to section 243 of Title 26, supra. That would contemplate an application for such adjustment or refund of contributions which are required to be made pending review, to refund which section 204(H) makes no provision. Section 243, supra, is also available, as we will show, to correct any erroneous computation on matter determined by the director which determination is conclusive by the failure to appeal under section 204(H).

As amended by the Act of June 28, 1943, General Acts 1943, page 281, such redetermination on the application of the employer may include the amount of wages which as to such employer will be taxable, at such reduced rate (wages in excess of which shall be excess wages). Before the amendment was made and while section 204(H) provided for a redetermination of only the employer's benefit wage percentage, this Court in Broadway v. Alabama Dry Dock & Shipbuilding Co., 246 Ala. 201, 20 So.2d 41, 45, observed as to it that it did not provide for a review of the fixation by the director of the State experience factor although the legislature had the power to provide for such review, therefore, the legislature intended "that aside from the limited review authorized by § 204(H), and after the expiration of sixty days, the rate as fixed should be non-reviewable." And "where applications for adjustments and refunds are made under § 243, Tit. 26, Code 1940, it must be assumed that the contribution rate fixed by the director is correct, and conclusively so."

At that time the contribution rate based on the benefit wage percentage was the only matter then subject to redetermination and review under section 204(H). But we think that is a holding that broadly

speaking to the extent that a redetermination and review are available under section 204(H) a failure to exercise the right as there provided has the effect of conclusively making effective the director's primary determination and it is not subject to review under section 243, supra, except for some erroneous computation or other error not going to the basis of the computation.

Since that time the legislature has added to the matter subject to review under section 204(H), supra, "the amount of wages which, as to such employer, will be taxable at such reduced rate (wages in excess of which will be excess wages)."

Appellants argue that since the amount of excess wages was subject to redetermination and review under section 204(H), supra, which was not done, it cannot be the basis of a refund under section 243, supra.

But we think the legislature did not intend that by such failure an employer would be concluded as to a matter over which the judicial power of the director could not be made conclusive when that want of authority appeared on the face of the proceeding. It may even be questionable whether the legislature intended to bestow on such a tribunal the right to make the primary determination of its jurisdiction in response to a contention that such proposed jurisdiction is in violation of some provision of the Constitution or plain provision of law. The inclusion in the determination by the director of matter which is not authorized by the Constitution or law appearing on the face of the proceedings could well be made the basis of review by common law certiorari without resorting to the remedy provided in section 204(H), supra.

The right of such contention is not curtailed by a failure to apply for a review under section 204(H). We agree that whatever right was foreclosed by a failure to apply for a redetermination under that statute cannot be made the basis of an application under section 243, supra.

But since the controversy here relates to the claim of a want of jurisdiction or plain violation of law which appearing on the face of the proceeding is not foreclosed by a failure to apply for a redetermination under section 204(H), supra, we see no reason why section 243, supra, should not be as available for such relief as is certiorari.

A holding by us that the excess wages amendment to section 204 is constitutional would serve to foreclose the right of appellee to question the amount of the excess wages as determined by the director for that a petition to redetermine was not made under section 204(H), supra. S. Buchsbaum & Co. v. Gordon, 389 Ill. 493, 59 N.E.2d 832, Id., 325 U.S. 838, 65 S.Ct. 1411, 89 L.Ed. 1964.

Section 243, supra, is not without application to other situations, such as overpayments because the amount had been incorrectly figured according to the rate established or because of a mistake in figuring the number of employees for whom payments had to be made, or any other overpayments from any general cause, Acme Engineering Co. v. Jones, 150 Ohio St. 423, 83 N.E.2d 202, as by the inclusion in the determination of a statutory burden which is in violation of the Constitution.

Appellants challenge the constitutionality of section 243, supra, as violative of sections 72, 100, 14 and 45 of the Constitution.

### Sections 72, 100 and 14, Constitution.

Section 72 provides that no money shall be paid out of the treasury except upon appropriations made by law. Section 100 prohibits a remission or release of an obligation or liability to the State or its diminution by the legislature, or that it be extinguished except by payment. Section 14 prohibits all suits against the State. We have many cases on the subject of each such provision of the Constitution.

We do not think section 243, supra, violates any of them. To understand its application to this situation it is necessary to analyze its status as respects those provisions of the Constitution.

We recently had occasion in an advisory opinion to the House of Representatives of Alabama in respect to the office building bill before the House for the Industrial Re-

lations Department of the State to observe that the unemployment compensation fund is set up by section 197, Title 26, Code, to be composed principally of contributions made to it by employers and employees pursuant to that chapter of the Code, and the accretions to such contributions and money received from the federal unemployment account. That by section 198, Title 26, Code, the director shall designate a treasurer of that fund. The State treasurer is not the treasurer of that fund by virtue of his office. Within that fund a clearing account is set up by such treasurer. Refunds payable under section 243, supra, are directed to be paid out of the clearing account. "After clearance thereof" all other moneys in the clearing account shall be deposited with the Secretary of the Treasury of the United States to the credit of the account of this State in the unemployment trust fund established and maintained by act of Congress. Opinion of the Justices, 252 Ala. 468, 41 So.2d 771.

. So that by section 243, supra, there is no refund of money out of the State Treasury. The money subject to refund payments is collected and administered for certain purposes as directed by law, and that is one of them, and does not become subject to the restrictions of section 72, supra. However, apparently to be sure that there is no violation of section 72 of the Constitution, section 249, Title 26, Code in terms makes an appropriation to the director of all such moneys for the administration of that chapter of the Code.

Moreover, when it is thus by law collected and put into the custody of some person who is charged by law with the duty of administering it according to standards set up, it is the legal duty of such person thus to apply the money, though he may be a State officer or administrator. When such money is thus collected by him his duty to administer it according to law may be enforced by mandamus or by some statutory procedure if one is enacted. In such a proceeding the State is not made a party in violation of section 14 of the Constitution. Met-

calf v. Department of Industrial Relations, 245 Ala. 299, 16 So.2d 787; State v. Louis Pizitz Dry Goods Co., 243 Ala. 629, 11 So.2d 342. The administrator of the fund is merely required by the court to perform a duty imposed upon him by law. Sweet, Director v. Wilkinson, Ala.Sup., 40 So.2d 427; Keller v. State Board of Education, 236 Ala. 400, 183 So. 268.

Section 243, supra, does not contemplate any payment out of the State Treasury. It is not necessary to impound an amount and hold it in abeyance as in some instances to meet the requirements of section 14, supra. Glass v. Prudential Ins. Co., 246 Ala. 579, 22 So.2d 13. It authorizes no personal judgment for the amount of the refund, Broadway v. Alabama Dry Dock & Shipbuilding Co., supra, nor directs payment out of the general treasury upon the basis of the result. Raible Co. v. State Tax Commission, 239 Ala. 41, 194 So. 560. And the question here is in no sense a release or discharge of an obligation or liability to the State, except by its payment in full as required by section 100 of the Constitution.

But section 243, supra, only makes provision for determining what is the true amount of the obligation. It does not release or extinguish a liquidated claim. State ex rel. Carmichael, Attorney General v. Jones,[1] 41 So.2d 280; Metcalf v. Department of Industrial Relations, 245 Ala. 299, 16 So.2d 787; Curry v. Woodstock Slag Corp., 242 Ala. 379, 6 So.2d 479; State v. Louis Pizitz Dry Goods Co., 243 Ala. 629, 11 So.2d 342.

Appellee's contentions are based on the following situation: As herein indicated, the instant application under section 243, supra, is to recover contributions made to the unemployment compensation fund by appellee, which were finally paid April 22, 1944. The application was filed August 18, 1947, within the four year period provided for in section 243, supra.

Under the provisions of the unemployment compensation law as it existed March 15, 1943, Title 26, section 201(D) provided that the employer should pay contributions

at the rate of 2.7% on his total taxable payroll, except as thereinafter otherwise provided. It made no provision for excess wages. It fixed a rate computed on the total wages paid by the employer. So that it related to both the rate and the payroll. Section 204, supra, fixed a complicated formula for a reduction of the contribution rate prescribed in section 201, Title 26, Code, based upon experience rating. One factor in the formula was and is benefit wages of the employer and the employees as there defined. Under that formula it was the duty of the director to determine the contribution rate as of April 1, 1943, and not less than fifteen days before April 1st notify the employer of the State's experience factor, his benefit wage percentage and his contribution rate. By this process there may be reduction in the 2.7% rate due to a good experience rating. By section 204(H) the employer was given the right within sixty days of the date of mailing the notice to apply to the director for a redetermination of his contribution rate as fixed by his benefit wage percentage. On April 1, 1943, no provision was made in section 204(H) for a redetermination of the amount of wages which will be taxable to the employer at a reduced rate (wages in excess of which will be excess wages).

On March 15, 1943, the director determined the contribution rate of this employer and notified it that for the next four calendar quarters beginning April 1, 1943, that such rate was 1.5%. No application was made to review or redetermine under section 204(H), supra. Thereafter on June 28, 1943, the Governor approved a legislative act providing an additional contribution rate on what was defined as excess wages. This Act was entitled on act to amend certain sections of Title 26 of the Code, including section 204, but not including 201. The provision for excess wages was, by an amendment to section 204(G), by adding a subhead (6, a, b, c, and d). The excess wages as added was in short the amount of the payroll for twelve months in excess of its average taxable payroll for the last four years (not being exact in this statement). It was effective for each twelve month period beginning April 1,

1943, and provided that the contribution rate for each employer as to excess wages with respect to employment paid after June 30, 1943, and before April 1, 1946, shall be 2.7% of such excess wages.

This is said to have been in response to a request by the Governor to build up the fund by contributions based on excessive employment due to war conditions for the benefit of soldiers when they return, who have an invested interest in such fund. Other states also made provision for such contemplated conditions. State v. Donovan, 218 Minn. 606, 16 N.W.2d 897; S. Buchsbaum & Co. v. Gordon, 389 Ill. 493, 59 N.E.2d 832; Pratt & Whitney Aircraft Corp. v. Unemployment Commission, 354 Mo. 1017, 193 S.W.2d 1, 163 A.L.R. 1141; Celanese Corp. v. Davis, 186 Md. 463, 47 A.2d 379.

Such amendment also provided that not less than fifteen days before July 1, 1943, and before April 1st of each year thereafter to and including the twelve month period expiring March 31, 1946, the director shall notify each employer for whom the contribution rate effective April 1st of such year is less than 2.7% the amount of wages which as to such employer will be taxable at such reduced rate (wages in excess of which will be excess wages). That means the amount of wages on which the contribution rate is reduced by experience rating, and the amount of excess wages on which the contribution rate is 2.7%. Of course that has no application to an employer whose contribution rate is not reduced below 2.7% by his experience rating.

After the date of this amendatory act of June 28, 1943, and on July 1, 1943, the director notified this employer that it would have to pay at the rate of 2.7% during the period from April 1, 1943, through March 31, 1944, on the amount of its total payroll which exceeded $853,903.31, ascertained to be its average taxable payroll. The total payroll was later ascertained to be $1,100,580.37 for the year of April 1, 1943 to March 31, 1944.

The results in respect to this employer were that his entire payroll for the quarter from April 1, 1943 to June 30, 1943 was $268,902.10, on which he paid at the rate

of 1.5%. For the quarter from July 1, to September 30, 1943, $258,297.48, also at 1.5%. For the quarter from October 1, 1943 to December 31, 1943, $273,193.45, also at 1.5%. From January 1, 1944 to January 22, 1944, his payroll was $53,510.16, also at 1.5%. The aggregate of the payrolls to that date was $853,903.21, which was his average as fixed by the director on July 1, 1943. His payroll from January 22 to March 31, 1944, the end of that tax year, was $246,677.16. That was the amount of his excess wages on which he was due by the Act of June 28, 1943, to pay at the rate of 2.7%. This he paid on April 22, 1944, without protest and presumably continued to pay on the basis of that Act through the tax year ending March 31, 1946, when the effect of the Act expired. He claims in this proceeding a refund of an amount equal to the difference between 1.5% and 2.7% on .......... $246,677.16.

The amount paid by him at
2.7% was ................ $6,660.28,
but he claims the correct
amount should be at 1.5% .. $3,700.15,

so that he claims ........... $2,960.13 as a refund for the year ending March 31, 1943, under authority of section 243, supra, claiming that the amendment violates section 45 of the Constitution and has retroactive operation, and that the fixation of the contribution rate as of April 1, 1943, on the entire payroll for the next twelve months could not be changed by subsequent legislation and making other claims which will be separately considered.

There was no application by this employer to review the determination as provided for in section 204(H), supra, as likewise amended to include "the amount of wages which, as to such employer, will be taxable at such reduced rate (wages in excess of which will be excess wages)." But we think that was not necessary as we have said in respect to the contentions as to which the employer is now seeking to have a refund.

### Section 45 of the Constitution.

The contention is made that the Act of June 28, 1943, is violative of section 45 of the Constitution in that as now material, the title is merely to amend section 204 of Title 26, Code, whereas the Act adds matter not germane to that section of the Code and, therefore, the subject of the Act is not clearly expressed in the title. All understand the principle that a Code section may be amended without violating section 45, by an act entitled "An Act to Amend" that Code section, provided the amendatory matter is germane to the subject matter of that Code section or some part of it. McCoy v. Jefferson County, 232 Ala. 651, 169 So. 304; State v. Davis, 130 Ala. 148, 30 So. 344, 89 Am.St.Rep. 23; Board of Revenue v. Jansen, 224 Ala. 240, 139 So. 358; Ferguson v. Commissioners' Court, 187 Ala. 645, 65 So. 1028; A. Bertolla & Sons v. State, 247 Ala. 269, 24 So.2d 23; Wood & Pritchard v. McClure, 209 Ala. 523, 96 So. 577; Dunn Construction Co. v. State Board of Adjustment, 234 Ala. 372, 175 So. 383; Davis v. City of Tuscumbia, 236 Ala. 552, 183 So. 657; Smith v. Birmingham Realty Co., 208 Ala. 114, 94 So. 117; Ballenger Const. Co. v. State Board of Adjustment, 234 Ala. 377, 175 So. 387; Rogers v. Garlington, 234 Ala. 13, 173 So. 372.

It is claimed by appellee, and the claim was sustained in the trial court, that the amendatory matter was germane only to section 201, supra, and not to section 204, Title 26, Code.

Section 201, supra, sets up a base contribution rate, made expressly subject to the provisions of section 204, supra, and "except as hereinafter otherwise provided". That rate is based on the "total wages payable or paid as hereinafter set out".

Section 204, supra, sets up a complicated formula for experience rating by which the rate base of section 201 supra, is modified. Both statutes set up a contribution rate on the employers' payrolls. Section 204 supersedes section 201 as to a taxpayer whose experience rating justifies a less rate than 2.7%. In that event his entire contribution rate is fixed by section 204. That is a rate computed on the employer's payroll. Prior to the amendment the rate was computed on the entire payroll. The amend-

ment allows such reduced rate only on that part of the payroll less than the "excess wages", with the full rate of 2.7% on the excess wages. The provision for excess wages would have no place under section 201 because under it the rate of 2.7% applies to the entire payroll including excess wages. Section 204 contains the formula for reducing the rate set up in section 201. The amendment is a limitation on the application of the reduced rate as set up in section 204. So that the reduced rate so provided will only have application to the average payroll as there defined, making the excess under the rate of 2.7%.

■ We know of no other section of Title 26, Code, to which the amendment would better serve its purpose than section 204, supra. It in substance and effect modified the law as it previously existed in section 204. It did not violate section 45 of the Constitution.

### Vested Rights.

It is contended by appellee that when on March 15, 1943, the director determined its contribution rate to be 1.5% for the twelve months beginning April 1, 1943, to be computed on its payroll for that period, appellee was thereby vested with a right not subject to change during that tax year by subsequent legislation, on the theory that since no application was made under section 204(H), such determination was a judicial act by a specially constituted court under section 139 of the Constitution, whose decision making application of the rate was conclusive as that of any other court.

Such determination of the contribution rate by the director is based, as we have observed, upon the benefit wage percentage of the employer in relation to the State experience factor prescribed by a table set up in section 204(F) Title 26, Code. When those two factors are ascertained the table prescribes the contribution rate. The State experience factor once fixed is final for that year. Broadway v. Alabama Dry Docks & Shipbuilding Co., 246 Ala. 201, 20 So.2d 41. The benefit wage percentage of each employer is separately fixed by a formula based on matter to be ascertained

by the director. Both the benefit wage percentage and the State experience factor when determined by the director are conclusive, except the percentage may be reviewed under section 204(H), supra, subject to errors in computation reviewable under section 243, supra. The matter that was reviewable under section 204(H) on March 15, 1943, was his benefit wage percentage which automatically fixed his contribution rate. That is what was judicially determined and became conclusive by not reviewing it under section 204(H), supra. And that is not in any respect altered by the amendment of June 28, 1943. That contribution rate was thereby ascertained to be 1.5%.

So far as immediately material that Act made a change by which the contribution rate so ascertained should be computed only on the amount of his average payroll, but not on the excess wages which is that which exceeds the average to be ascertained by the director. On the excess, the contribution rate of 1.5% should not apply, but the rate of 2.7%, the same as set up in section 201, supra, should apply.

■ With respect to that change, the finding by the director of the benefit wage percentage and the contribution rate were in no respect affected. The Act merely changed the law in respect to the effect of such finding and determination. The order of the director made March 15, 1943, that it be computed on the entire payroll was merely putting into effect the law then existing which so required. It was not a judicial determination which the director was authorized to make. Its application was automatic. By a change in the law made June 28, 1943, that determination had a more restricted effect than it had formerly. But such change in the law had no effect upon the contribution rate as fixed March 15, 1943 at 1.5%. The rate of 2.7% was already fixed by section 201, supra. The law merely applied the reduced rate to a part of the payroll, and the larger rate fixed by law to the balance of it. The employer had no constitutional right to have the law remain unchanged as to the applicability of the reduced rate. In fact by the very terms of section 250, Title 26, Code,

the right to make such change was reserved at the time the contribution rate was determined and fixed.

■ ■ There is no principle of law or constitutional construction which would prevent a change in the law during the current tax year of the amount of an excise tax payable that year, so as to make it effective, even retroactively, for the entire year. No part of the tax here involved had been paid when the law was changed, not to say that circumstance was controlling. The amount of an excise tax can be increased or decreased during the current year by legislation. McClure v. State, 17 Ala.App. 618, 88 So. 35. Exemptions from ad valorem taxes are thus subject to change effective during the current tax year with certain limitations. In re Opinions of the Justices, 234 Ala. 358, 175 So. 690; In re Opinion of the Justices, 249 Ala. 572, 32 So.2d 297.

This principle applies generally to a license tax which may be increased or decreased during the current year even after it has been paid under the old law for that year. 37 Corpus Juris § 40, page 189; 53 Corpus Juris Secundum, Licenses, § 18, page 514, note 60.

■ Moreover, a taxable event may be one which has occurred before the enactment of the law levying the tax. Anderson v. City of Birmingham, 205 Ala. 604, 88 So. 900; Citizens' Mutual Ins. Co. v. Lott, 45 Ala. 185; McClure v. State, supra.

But the Act of June 28, 1943, amending section 204(G), supra, by adding (6–b) provides that "effective for each twelve-month period beginning with the first day of April 1943, and of each year thereafter to and including the twelve-month period ending March 31, 1946, the contribution rate for each employer as to excess wages with respect to employment paid after June 30, 1943, and before April 1, 1946, shall be two and seventy one-hundredths per cent of such excess wages paid."

It is clear from that provision that the contribution rate of 2.7% on the excess wages only applies to such wages for the tax year from April 1, 1943 to March 31, 1944, as shall be paid after June 30, 1943.

The payment for that year sought to be refunded was made April 22, 1944.

■ The Act of June 28, 1943 does not violate section 45 on account of its supposed retroactive operation without so expressing it in the title since by its terms it is not retroactive in operation.

If the Act looks only to the past for information on which a computation is to be made to ascertain an amount to be effective for future operation, it is not so retroactive as to require a statement of such effect in the title to satisfy section 45 of the Constitution. State, ex rel. Highsmith v. Brown Service Funeral Co., 236 Ala. 249, 182 So. 18. This is wholly different from the principle in Lindsay v. United States Savings &. Loan Ass'n., 120 Ala. 156, 24 So. 171, 42 L.R.A. 783.

■ The Act also contains the following clause: "Provided, however, that no portion of the first hundred thousand dollars of any employer's total taxable payroll in any such twelve-month period shall be determined to be excess wages within the meaning of this section."[1] That means that if an employer has a contribution rate as authorized by section 204 supra, which is less than 2.7%, that reduced rate shall apply to the first $100,000 of that employer's total taxable payroll in any twelve month period, although as computed under the formula provided for excess wages, some of it would be classified as excess wages. It does not exempt $100,000 from the computation as if it were not a part of the total payroll, but serves only to exclude the first $100,000 of the total payroll as a part of excess wages paid. It of course serves to exempt from the operation of the excess wage rate all those employers having a reduced rate whose total payroll for that twelve month period did not exceed $100,-000.

The judgment of the circuit court is reversed and one here rendered denying the right of appellee to an adjustment or refund under section 243, Title 26, Code.

Reversed and rendered.

BROWN, LAWSON and SIMPSON, JJ., concur.

78

## On Rehearing.

FOSTER, Justice.

 We did give consideration to appellee's supplemental brief contending that we should not apply the amendment of June 28, 1943 to the year from April 1, 1943 to March 31, 1944, notwithstanding the Act expressly so declared and notwithstanding section 250, Title 26, Code, and directing our attention to administrative practice in reference to Act 527, approved September 2, 1949, making certain amendments to the provisions of that article of the Code not declaring expressly the year upon which it shall operate. We did not think such administrative construction material to the question we had and therefore did not refer to it. We are of the same opinion now. We are not construing Act 527, supra, and find no occasion to consider the administrative construction of it, assuming that we take judicial notice of such construction by the Department of Industrial Relations.

We cannot agree with appellee's contention as to the $100,000 provision. We understand his contention to be that there should be deducted the first $100,000 of any employer's total taxable payroll from such total payroll after ascertaining his average payroll in order to determine what his excess wage payroll is, so that the amount of the excess wage payroll will be thereby decreased in the sum of $100,000, if it is more than that or wiped out if it is less. But that is contrary to the plain unambiguous language of the law itself, which is, as we have said, that "no portion of the first hundred thousand dollars of any employer's total taxable payroll * * * shall be determined to be excess wages." It does not provide for the deduction to be made from the total taxable payroll in order to ascertain the amount of the excess wages, and provides no deduction from any sum whatsoever, but simply declares that the first $100,000 shall not be determined to be excess wages.

It is necessary therefore for us to deny the application for rehearing.

BROWN, LAWSON, and SIMPSON, JJ., concur.