SHORES, Justice.
This is an appeal from the trial court’s order granting the defendant’s motion to dismiss.
Ala.Const. 1901, Art. Ill, § 43, states:
“In the government of this state, except in the instances in this Constitution hereinafter expressly directed or permitted, the legislative department shall never exercise the executive and judicial powers, or either of them; the executive shall never exercise the legislative and judicial powers, or either of them; the judicial shall never exercise the legislative and executive powers, or either of them; to the end that it may be a government of laws and not of men.”
Plaintiff Eulene Hawkins alleged that Governor James had violated § 43 by an exercise of legislative powers when he issued an executive memorandum to “All Heads of Departments, Boards, etc.” on the subject of “Personnel,” which stated that:
“[N]o department, agency, board et al is to request a waiver of the 70 year old mandatory retirement without the approval of the Finance Director, and his approval is only to be given in the case when the public health of Alabama would be impaired.”
Hawkins alleged that Governor James’s executive memorandum is in violation of § 43 because it removed the permissive ability of a state employee who had reached the age of seventy to remain in employment for the State of Alabama under certain conditions, as allowed by Ala.Code 1975, § 36-27-16(a)(l)(c), which provides:
“Any employee who attains age 70 shall be retired or shall withdraw from service forthwith; except, that any employee may be continued in the state service from year to year on his application, approved by the personnel board, if evidence of physical and mental fitness is furnished.. .. ”
Ala.Code 1975, § 36-27-16(a)(l)(c), was incorporated into the Handbook for Employees of the State Personnel Department, Montgomery, Alabama, June, 1975 (Eighth Edition), which states, in part:
“Retirement at age 70 is compulsory, unless the Personnel Board, on the recommendation of the appointing authority and a medical review board, approves extension of service from year to year. Employees who want to work past age 70 must make a request and furnish a report on the physical examination forms prescribed by the Personnel Board. . .. ”
Hawkins, age seventy-four, continued in employment past her seventieth birthday by meeting the conditions of § 36-27-16(a)(1)(c). She alleged that she was still able to meet the requirements and that she would still be a paid employee of the State but for the unconstitutional exercise of legislative power by Governor James in his memorandum.
Hawkins asked the trial court to declare Governor James’s executive memorandum unconstitutional and requested a preliminary and permanent injunction enjoining and ordering defendant to reinstate plaintiff to her position in the Department of Pensions and Security, State of Alabama, with back pay from October 1, 1980, to date.
The defendant filed a motion to dismiss, claiming in part that the defendant was immune from the suit under Ala. Const. 1901, Art. I, § 14, which states “[t]hat the State of Alabama shall never be made a *117 defendant in any court of law or equity.” The trial court’s order granting the motion to dismiss does not give any reason for the same except to state:
“The Court, having considered the pleadings filed and agreements made by the parties, is of the opinion that, as a matter of law, Defendant’s Motion to Dismiss as amended, should be granted.” This appeal followed. We reverse.
The two issues linked within this appeal are:
(1) Whether the defendants were immune from suit under Ala.Const. 1901, Art. I, § 14; and (2) whether Governor James’s executive order was a violation of Ala. Const. 1901, Art. Ill, § 43.
The law concerning immunization from suit under Ala.Const. 1901, Art. I, § 14, was ably set out by Justice Almon in Gill v. Sewell, 356 So.2d 1196 (Ala.1978), wherein he said:
“In determining whether an action against a State office or agent is in fact a suit against the State, the court considers the nature of the suit or the relief demanded. Boaz Nursing Home, Inc., v. Recovery Inns of America, Inc., 289 Ala. 144, 266 So.2d 588 (1972); State v. Norman Tabacco Company, 273 Ala. 420, 142 So.2d 873 (1962).
“There are several categories of cases which do not fall within the prohibition of § 14. In Aland v. Graham, 287 Ala. 226, 250 So.2d 677 (1977), the court listed these categories as:
“ ‘(1) Actions brought to compel State officials to perform their legal duties. Department of Industrial Relations v. West Boylston Manufacturing Co., 253 Ala. 67, 42 So.2d 787; Metcalf v. Department of Industrial Relations, 245 Ala. 299, 16 So.2d 787. (2) Actions brought to enjoin State officials from enforcing an unconstitutional law. Glass v. Prudential Insurance Co. of America, 246 Ala. 579, 22 So.2d 13; Southall v. Stricos Corp., supra [275 Ala. 156, 153 So.2d 234], (3) Actions to compel State officials to perform ministerial acts. Curry v. Woodstock Slag Corp., 242 Ala. 379, 6 So.2d 479, and cases there cited. (4) Actions brought under the Declaratory Judgments Act, Tit. 17, § 156 et seq., Code 1940, seeking construction of a statute and how it should be applied in a given situation. Curry v. Woodstock Slag Corp., supra, and cases there cited.’ 287 Ala. at 229-230, 250 So.2d at 679.
“This list was never intended to be a comprehensive final list of those actions not barred by Section 14. In Unzicker v. State, 346 So.2d 931 (Ala.1977), we held that a suit may be maintained against State officials in their official capacity for acts allegedly committed fraudulently, in bad faith, beyond their authority, or under a mistaken interpretation of the law.”
356 So.2d at 1198.
Hawkins has alleged that the executive memorandum was made outside the authority granted to the Governor, which causes her actions to fall without the prohibition of § 14.
The touchstone in determining whether the Governor acted beyond his authority is the limitations set forth in Ala.Const. 1901, Art. Ill, § 43, and the interpreting case law. If Governor James’s executive memorandum is in violation of § 43, then Hawkins’s action is not barred by § 14.
It is commonly held that the executive cannot discharge the functions of the legislature in any manner by so acting in his official capacity that his conduct is tantamount to a repeal, enactment, variance, or enlargement of legislation. 16 Am. Jur.2d Constitutional Law, § 305 (1979).
Counsel for the Governor argues that there is no violation of § 43 because there is no requirement under § 36-27— 16(a)(1)(c) that there must be a recommendation from anyone before an employee who attains age seventy can make application for continuation in state service. Further, the Governor argues there is nothing in the statute that requires the personnel board to consider any recommendation in deciding whether or not to approve the *118 application of the employee. Therefore, he says that the memorandum has not been shown to have any effect on this process, since the process is based only upon application by the employee and approval by the personnel board and is in no way contingent upon an approval of the finance director. We cannot agree.
Since the court’s order on the motion to dismiss considered the stipulation of facts made by the parties, the motion is to be treated as one for summary judgment and disposed of as provided in Rule 56, Alabama Rules of Civil Procedure. Rule 12(c), ARCP.
After careful review of the accompanying depositions as required by Rule 56, ARCP, we hold that, although Governor James’s memorandum by its express language does not specifically alter the requirements under § 36-27-16(a)(l)(c), Hawkins has shown that it does have a direct practical effect on the process established through that section. This is undisputedly shown by the testimony of Alabama State Personnel Director John Stanley Frazer given in response to questions in a deposition:
“Q. Now, what is the normal procedure when an employee reaches the age of seventy; and if he or she wishes to continue in employment, what must he or she do?
“A. There is a form on which the employee files an application for continuation. The form includes a— spaces for report of a physical examination. It also includes a space for review by the Medical Board of the State Retirement System. When that is submitted to this Department, we refer it to the employing department or agency — some of them are cities and counties, as you probably know — a form which provides space for the responsible party, the appointing authority to make a recommendation as to whether or not the employee should be continued or retired.
“Q. Okay. And so the recommendation comes from their own department?
“A. Right.
“Q.- And usually their department head?
“A. Right.
“Q. Or cabinet level official?
“A. It has to be the department head if it is a State department.
“Q. Right. By that, I mean not just their immediate supervisor?
“A. No.
“Q. But their very top . . .
“A. No.
“Q. ... cabinet level manager?
“A. Right.
“Q. All right. And further, does your Department, or is it the particular department from which they come that considers the evidence of their mental and physical fitness?
“A. Finally the State Personnel Board considers the entire package: the employee’s application, the physical examination report, the recommendation of the Medical Board in the Retirement System, and the appointing authority’s recommendation.
“Q. Okay. Now, who is the appointing authority?
“A. That is the department head.

“Q. Okay. Do you have any idea what weight if any is given to the Commissioner’s [department head’s] recommendation?
“A. Well, over the years, various Personnel Boards have for the most part regarded the Department Head’s recommendation as controlling, since they have no personal familiarity with the individual employee. And they therefore rely very heavily on the impressions that the people — -that the person who has the opportunity to know her and to make the recommendation has.
“Q. You say normally over the years this has been controlling. Has anything occurred in the last couple of *119 years or so or in recent years that would make this less than controlling?
“A. The Department Head’s recommendation?
“Q. Yes, sir.
“A. No, sir.

“Q. Okay. Well, let’s say prior to the August 9, 1979, memorandum, was it a consistent policy of the Personnel Department to approve applications for continuation beyond the age of seventy if the particular Department Head approved it and even if the public health were not involved?
“A. Not the Personnel Department. The Personnel Board.
“Q. Excuse me.
“A. It was pretty much a consistent policy.
“Q. Okay. And that policy was changed by that August 9, 1979, memorandum, was it not?
“A. Yes.”
Also, the deposition taken of Alabama Department of Pensions and Security Commissioner Gary Cooper revealed that, but for the Governor’s memorandum, Cooper would have again recommended that Hawkins be continued on in employment in his department.
These excerpts of testimony show that, although the memorandum does not specifically change § 36-27-16(a)(l)(c) in that the employee still starts the process by making an application and the final determination is still made by the personnel board, it has the effect of altering the process because the pivotal consideration given by the personnel board was based upon the recommendation of the department head, which no longer can be freely given as a result of Governor James’s directive.
Therefore, the application of the memorandum has the effect of an exercise of legislative power, which violates Ala.Const. 1901, Art. Ill, § 43.
This cause is reversed and remanded to the trial court for a decision consistent with this opinion.
REVERSED AND REMANDED.
JONES, ALMON, EMBRY and BEAT-TY, JJ., concur.
TORBERT, C. J., and MADDOX and FAULKNER, JJ., dissent.
ADAMS, J., not sitting.